163   183
102a ¹211

## TAYLOR v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY and KANSAS CITY, FT. SMITH & SOUTHERN RAILROAD COMPANY, Appellants.

### Division Two, May 21, 1901.

1. **New Trial:** NO GROUND SPECIFIED: INSUFFICIENT EVIDENCE. Where all the grounds assigned in the motion for a new trial go to the insufficiency of the evidence to support the finding and judgment of the court, it will be *held,* in the absence of specifications of grounds from the order granting the new trial, that it was granted because of the insufficiency of the evidence to sustain the judgment.

2. ———: DISCRETION. In granting new trials, trial courts have large discretionary powers. Especially is this rule true when the judgment is challenged on the grounds of insufficient evidence to sustain it.

3. ———: ———: WEIGHT OF EVIDENCE. Where, under the evidence, the finding in ejectment might have been for either the plaintiff or for the defendant on his plea of estoppel, it was the plain duty of the trial court to grant a new trial, if upon the presentation of the motion therefor it was of the opinion that the judgment was for the wrong party.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*Edw. J. White* for appellants.

(1) "Where a landowner stands by and permits a railroad to go to the expense of constructing its road through his land and run its trains over it and acquiesces thereto, even though he may not have given his express consent, this will create an implied license on the part of the railroad, which the landowner can not subsequently revoke and he will be estopped from maintaining ejectment." Provolt v. Railroad, 57 Mo. 256; Baker v. Railroad, 57 Mo. 265; Kanaga v. Railroad, 76 Mo. 207; McClellan v. Railroad, 103 Mo. 295; Dodd v. Railroad, 108 Mo. 581; Avery v. Railroad, 113 Mo. 566; Scarritt v. Railroad, 127 Mo. 303; Alexander v. Railroad, 138 Mo. 464; Organ v. Railroad, 51 Ark. 235; Midland Company v. Smith, 113 Ind. 233; Griffin v. Railroad, 70 Ga. 164; Railroad v. Strauss, 37 Md. 237; Canal Co. v. Lloyd, 18 Ves. Jr. 515; Pettibone v. Railroad, 14 Wis. 443; Lewis, Emin. Dom., secs. 667, 648. (2) "The alienation of land, upon which there is an existing easement, to one who buys with knowledge of such easement, is subject, in law, to the rights of the owner thereof." Hargis v. Railroad, 100 Mo. 222; Alexander v. Railroad, 138 Mo. 473; Cook v. Railroad, 40 Iowa, 451; Diffendall v. Railroad, 86 Va. 459; Tiedeman, Real Prop., secs. 590, 610, 601; 6 Am. and Eng. Ency. Law, 150, 151; Stilwell v. Railroad, 39 Mo. App. 221; Chase v. Hall, 41 Mo. App. 15; Keating v. Korfhage, 88 Mo. 524; 1 Jones, Real Prop. in Con., sec. 880; Bisp. Pr. Eq. (4 Ed.), sec. 268. (3) In inducing the Kansas City, Pittsburg &

Gulf Railroad Company to buy the road, constructed across his property, and to connect therewith and knowingly permitting it to extend said road to the Gulf of Mexico, without divulging his claim for right of way, the plaintiff estopped himself from maintaining ejectment, as against the Kansas City, Pittsburg & Gulf Railroad.   Harrelson v. Railroad, 151 ' Mo. 498;  Day v. Railroad, 69 Miss. 589; Mahaska County Ct. v. Railroad, 28 Iowa 437; Holbert v. Railroad, 38 Iowa 315; Bigelow on Estoppel (2 Ed.), 453, note; Parkhurst v. VanCourtland, 14 Johns. 43; Railroad v. Dubois, 12 Wall. 47; Chapman v. Chapman, 59 Pa. St. 214; Bispham's Pr. Eq. (4 Ed.), sec. 282.   Wherefore, it is contended that the cause should be remanded, with direction to the lower court to set aside its order granting the plaintiff a new trial.

*L. P. Cunningham* and *Thomas Dolan* for respondent.

(1)   In this case the landowner did not stand by and permit, nor consent to the building upon, or occupation of, his land by the railroad company. As pointed out in our statement, neither the plaintiff nor his grantor knew for a year or more after, that the railroad had been constructed over lot T, and there was no acquiescence in the use by the railroad company.   The railroad company entered as a trespasser and remained upon the lot only in that character.   The facts clearly distinguish this case from Scarritt v. Railroad, 127 Mo. 303, and all the other authorities cited by defendant.   The defendant had no license to enter, nor permission to remain, and ejectment will lie.   Our case is much stronger upon the facts than that of Walker v. Railroad, 57 Mo. 275.   There, the plaintiff was informed by letter that the railroad was being built over his land.   He did not answer until some months after, and then instructed the ejectment suit to be brought.

It is there said the plaintiff was not bound to be present either by himself or agent, and actively object to any trespass upon his land by an intruder in order to preserve and protect his rights. The course of plaintiff, in the case at bar, and his grantor, the Joplin Mining & Smelting Company, "can not be tortured" into an acquiescence, consent or license for the company to proceed. Avery v. Railroad, 113 Mo. 564; Carey v. Railroad, 100 Mo. 29; Provolt case, 57 Mo. 256. (2) Easements originate in grant, express or implied. Anderson's Dictionary of Law. A railroad pass is permissible to be given and received as compensation for right of way. Elliott on Railroads, sec. 1611. (3) The fact that the main track of the railroad was already built over the lot when plaintiff obtained his deed, December 15, 1891, does not bar his recovery unless his grantor, the Joplin Mining & Smelting Company, did something which amounted to a license. Alexander v. Railroad, 138 Mo. 464; McClellan v. Railroad, 103 Mo. 309; Railroad v. George, 145 Mo. 38; Bradley v. Railroad, 91 Mo. 497.

BURGESS, J.—This is an appeal from an order of the trial court, setting aside its finding and judgment in favor of defendants, and granting plaintiff a new trial.

The action is ejectment for the possession of a lot two hundred feet square, described as lot "T" in the Joplin Mining & Smelting Company's addition to Joplin, Missouri.

The action was originally against the defendant Kansas City, Pittsburg & Gulf Railroad Company alone, but afterwards upon motion of the defendant, the Kansas City, Fort Smith & Southern Railroad Company, it was made defendant.

The petition is in the usual form. The answer, leaving off the formal parts, is as follows:

"Defendants admit that the roadbed of the Kansas City,

Pittsburg & Gulf Railroad Company, is constructed across a portion of the lot and tract of land described in plaintiff's petition, but deny that it was constructed at the date set forth in the petition, or that it was constructed wrongfully, or that it was constructed by the defendant Kansas City, Pittsburg & Gulf Railroad Company at all, but defendants state that each and every one of said allegations are false.

"That in truth and in fact said roadbed was built and constructed during the month of May, 1889; that it was built and constructed by the defendant Kansas City, Ft. Smith & Southern Railroad Company, a Missouri corporation, and sold and delivered to the defendant, Kansas City, Pittsburg & Gulf Railroad Company, as a portion of the line of road of said first named company, on May 3, 1893; that said roadbed, at the place aforesaid, that is, in, upon and across the lot and tract of land in plaintiff's petition described, was built and constructed by said Kansas City, Fort Smith & Southern Railroad Company, by and with the permission and consent of the plaintiff's grantor and by and with the consent and permission of the plaintiff himself, who as president of the Joplin Mining & Smelting Company, a corporation, on December 15, 1891, conveyed said lot to himself, previous to that date having offered inducements and invitations to the said Kansas City, Ft. Smith & Southern Railroad Company to build and construct its said roadbed where the same is now located, in, upon and across said lot and tract of land in the plaintiff's petition described.

"Defendants deny that at the date of the original entry and construction of said roadbed, at the place aforesaid, the plaintiff was the owner of or entitled to the possession of said lot in his petition described, but state that at such time the Joplin Mining & Smelting Company was the owner of and in possession of said lot, and the plaintiff was the president and chief officer of said company. That said Joplin Mining &

Smelting Company and the plaintiff, as president thereof, allowed, permitted and consented to the entry of said Kansas City, Ft. Smith & Southern Railroad Company in and upon said lot, for the construction of its roadbed thereon, and conceded, granted and donated the right of way for it to construct its said roadbed thereon, knowingly permitting the construction thereof at great cost and expense to the said defendant, without objection or hindrance.

"That after the construction of said roadbed, so permitted and acquiesced in by the plaintiff and his grantor, neither the plaintiff nor his said grantor in any way denied or forbade said defendant from the use and occupation of the said right of way for the purposes of its said roadbed, until the institution of the present action, nor did they, or either of them, in any way, during such time, object to, disapprove of, protest against, or resist, the use and occupation thereof by said defendant or either of said defendants, but, on the other hand, both the original construction and the subsequent use and occupation of said roadbed was knowingly permitted and acquiesced in by both the plaintiff and his said grantors. That since May 1, 1889, the said Kansas City, Ft. Smith & Southern Railroad Company, and the Kansas City, Pittsburg & Gulf Railroad Company, as its successor, have continued to run their trains in, upon and over the right of way across said lot in the plaintiff's petition described, without hindrance from the plaintiff or his said grantor.

"That by reason of the conduct of the plaintiff and said grantor, the Kansas City, Ft. Smith & Southern Railroad Company, was induced to make the expenditures necessary to construct its roadbed in and upon said lot and tract in the plaintiff's petition described, connecting its line of road from Joplin, Missouri, to Sulphur Springs, Arkansas, at an expense of over $1,000,000, and since the sale and delivery of said road by

said defendant to the defendant Kansas City, Pittsburg & Gulf Railroad Company, it has, in turn, been induced to make expenditures and outlays in and upon said lot and to use said roadbed over said lot, all of which was knowingly permitted and acquiesced in by the plaintiff, by all of which he is estopped to claim the possession of the said lot, or the portion thereof on which the defendant's roadbed is constructed."

Plaintiff by replication denied all new matter set up in defendant's answer.

The case was tried by the court, a jury being waived.

The plaintiff showed a regular chain of title in himself to the lot in question.

Defendants' roadbed was constructed across the southeast corner of said lot, in November, 1889, at which time the forty-acre tract, of which it is part, was owned by the Joplin Mining & Smelting Company, a corporation of which plaintiff was the president. The lot was not deeded to him by the corporation until December, 1891, two years after defendant's roadbed was built across it, and since then its trains have been passing daily across this corner of the lot.

Plaintiff did not reside in Joplin in 1889, but for twenty-five years next preceding that time he had been there each year repeatedly, and knew "in a general way, as president of said corporation, the location of defendant's roadbed, but that company did not know the railroad was located or built across said lot. It had no means of knowledge except through the plaintiff, and he testified in his cross-examination as a witness that neither he, nor the Joplin Mining & Smelting Company, knew of the railroad being built across lot T, and did not for a year or more afterward. That it never gave any consent for such purpose."

After plaintiff purchased the lot, in December, 1891, Colonel North, who was attorney and right of way agent for the

railroad company, went to the plaintiff to talk about buying the right of way in question; agreed to prepare deed, pay $100, and send deed and money to him, the deed to be executed and returned. And, besides, negotiations were going on between plaintiff and the railroad company directly, as late as February, 1897, within three months before the commencement of this suit, looking to settling for this right of way; correspondence to this end was had, and an annual pass for plaintiff and his wife was at last to be the consideration, which never came. After the main track was laid across the lot, the defendant was putting in a sidetrack on lot T. As soon as plaintiff discovered this, he objected and ordered them to stop work.

At the conclusion of the evidence adduced by plaintiff, defendants interposed a demurrer thereto, which was sustained, and judgment rendered for defendants.

Plaintiff in due time thereafter presented his motion for a new trial, upon the following grounds:

"First. The court erred in sustaining the demurrer interposed by defendants, at the close of plaintiff's case.

"Second. The evidence offered and submitted by plaintiff was ample and sufficient to authorize and entitle the plaintiff to a finding upon the issues, and a judgment in his favor against the defendant.

"Third. The finding on the issues and judgment should have been in favor of the plaintiff and against the defendant."

The motion was sustained, and defendants duly excepted.

The order granting the new trial does not specify, in so far as the record shows, upon what ground or grounds it was granted as required by section 2241, Revised Statutes 1889; but as the grounds assigned in the motion all go to the insufficiency of the evidence to support the finding and judgment of the court, it must be held that the new trial was granted upon that ground.

In granting new trials courts have large discretionary powers, and especially when the weight. of the evidence is involved, and the Supreme Court will not interfere with such discretion, unless it be made to appear that it was unwisely exercised. Now, under the evidence, we think, the finding of the court might have been either for the plaintiff or defendants, and if it was of the opinion, when the motion for a new trial was presented, that its finding on the merits of the case was against the evidence, it was not only its province, but it was its plain duty to do as it did, set aside its finding and grant a new trial. [Bank v. Wood, 124 Mo. 72.] In the case of McKay v. Underwood, 47 Mo. 187, it was said that the granting of a new trial for the reason that the verdict is against the weight of the evidence, rests peculiarly with the judge presiding at the trial. The same rule is announced in Baughman v. Fulton, 139 Mo. 557; Iron Mountain Bank v. Armstrong, 92 Mo. 265; Eidemiller v. Kump, 61 Mo. 342; Cook v. Railroad, 56 Mo. 384; Reid v. Ins. Co., 58 Mo. 429.

The judgment is affirmed. *Sherwood, P. J.,* and *Gantt, J.,* concur.