## JOHN LITTIG v. URBAUER-ATWOOD HEATING COMPANY, Appellant.

### Division Two, February 18, 1922.

1. **ONE NEW TRIAL: Weight of Evidence.** Where the trial court granted a new trial to plaintiff on the ground that the verdict was against the weight of the evidence on the one issue of negligence, and a review of the case demonstrates that, if the testimony of the witnesses on that issue is worthy of belief the overwhelming weight of the evidence was with plaintiff, it will not be held that the court erred in granting the one new trial.

2. **NEGLIGENCE: Safe Place: Assumption of Risk: New Trial.** It is the duty of the employer to furnish his workmen a reasonably safe place in which to work; and the workman does not assume the risk of injury arising from his employer's negligent failure to provide for him a safe place. And where there was substantial evidence that the employer did not provide a reasonably safe place and the verdict was for him, the trial court did not err in granting the workman a new trial in his action for negligent personal injuries.

3. ———: **Contributory: Obvious and Imminent Danger.** Mere knowledge that one wall of a five-foot ditch, in which plaintiff was laying pipes, had been undermined to a depth of eighteen to twenty-two inches half way up from the bottom, is not sufficient to charge him with contributory negligence, as a matter of law, in continuing to work in the ditch until the wall caved in and injured him. Where the undermining had been done under the direction of defendant's foreman, there was nothing in the plaintiff's contract of employment which required him to inspect the premises where he was working, and there was nothing to indicate that the wall was more dangerous just before it caved in than it had been on previous days, the court cannot declare that the danger was so

Littig v. Urbauer-Atwood Heating Co.

imminent and obvious that he was guilty of contributory negligence as a matter of law in continuing to work in the ditch. To charge a workman with contributory negligence as a matter of law in continuing to work in a place whose unsafe and dangerous condition he did not create and for whose continuance he was not responsible, it must conclusively appear that the condition was so plainly unsafe and hazardous as to deter a man of ordinary prudence from continuing to work therein.

4. ———: Instruction: Literal Proof of Allegations. Where the wall of a ditch in which plaintiff was laying pipe was undermined and caved in upon him, and he sues for consequent injuries, an instruction for defendant telling the jury that plaintiff cannot recover unless he has proven that the undermining was of the exact dimensions alleged in his petition is palpably erroneous.

5. ———: ———: Comment. An instruction for defendant which singles out a detached portion of the evidence relied on by plaintiff to establish his case and tells the jury that such portion does not constitute evidence of negligence, is an unwarranted comment on the evidence, and erroneous on its face.

6. IMPEACHMENT: Refreshing Witness's Memory: Reading Memorandum to Jury. It is proper for a witness for defendant, by way of impeachment, to testify that plaintiff's witnesses made statements to him or in his presence in respect to material issues which differed from their testimony; and if he has forgotten what said witnesses said respecting such material matter, he may be permitted to refer to memoranda of the transaction, made at the time of its occurrence, solely for the purpose of refreshing his memory; but in no event should he be permitted to read the memorandum itself to the jury, over plaintiff's objection.

7. ———: Deposition or Signed Statement: Reading Detached Portions. Where a deposition or written statement signed by a witness is offered in evidence, counsel have no right to read to him detached portions thereof for the purpose of impeachment; but the whole deposition or statement should be shown to him, and if his signature thereto is admitted to be genuine the whole, so far as competent, must be offered in evidence. If a part of the deposition or written statement does not bear upon the question under consideration, then the impeaching party must read to the jury all the instrument contains in reference to the impeaching matter, and opposite counsel may then read so much of the remainder as is relevant and competent.

8. ———: ———: ———: Practice Condemned. The practice, on cross-examination, of reading detached portions of a deposition to a witness and then asking him whether he made such statement,

and of then closing the case without offering or reading the deposition to the jury, is condemned—as unfair, as intimating that the witness is telling a different story from that contained in the deposition, and as taking an undue advantage of him.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis*, Judge.

AFFIRMED.

*R. L. Goode* and *G. B. Arnold* for appellant.

(1) If the side of the trench which fell on the plaintiff was not undercut as much of the evidence goes to prove, then the risk of injury from the earth falling was an ordinary risk of the plaintiff's task, for all the evidence is to the effect that it was not necessary or customary to shore up the sides of a trench of that depth, when they are not undermined. An employee assumes the risks ordinarily incident to his task, after the employer has used ordinary care to provide him with a reasonable safe place in which to work. Fish v. Railway, 263 Mo. 106. (2) If the side of the trench was undermined to the depth alleged in the petition, and which some of the testimony goes to prove, then the danger to the plaintiff in working in the trench (especially as he worked in a bent-over position) was so imminent and obvious that he was guilty of contributory negligence as a matter of law. Aldridge's Admr. v. Furnace Co., 78 Mo. 559; Lucey v. Oil Co., 129 Mo. 32; Holloran v. Iron Co., 133 Mo. 470; Harff v. Green, 168 Mo. 308; Watson v. Coal Co., 52 Mo. App. 366; Olsen v. McMullen, 34 Minn. 94; Peterson v. City of Rushford, 41 Minn. 289; Reiter v. Railroad, 72 Minn. 225; Kletschka v. Railroad, 80 Minn. 238; Stuart v. Mfg. Co., 15 Ind. App. 184; Griffin v. Ry. Co., 124 Ind. 326; Swanson v. Lafayette, 134 Ind. 625; Simmons v. Railroad, 110 Ill. 347; Montgomery Coal Co. v. Barringer, 218 Ill. 332; Rassmussen v. Railroad, 65 Iowa, 236; Hodgson v. Railroad, 146 Mich. 627; Carlson v. Water Co., 8 S. D. 47; M., K.

& T. Railroad v. Spellman, 34 S. W. 298; Kelly v. Cowan, 49 Wash. 606; Naylor v. Railroad, 53 Wis. 661; Paule v. Mining Co., 80 Wis. 356; Pohlmann v. Foundry Co., 123 Mo. App. 219. (3) An employee is guilty of negligence that bars recovery for an injury when he encounters an obvious peril that a man of ordinary prudence would not encounter without protest. Therefore, all the cases cited above are apposite, though some of them were decided in jurisdictions where the plaintiff was said to have assumed risk. Patrun v. Railroad, 259 Mo. 109, 121. (4) The evidence for the plaintiff showed that he was guilty of contributory negligence as a matter of law, and the court should have given the instruction requested by the defendant that under the law and the evidence the plaintiff was not entitled to recover and the verdict should be for the defendant. Duesching v. Gas Co., 73 Mo. 229; Milburne v. Railroad, 86 Mo. 109; White v. Railroad, 250 Mo. 482. (5) "It is the settled doctrine of this court that if upon the pleadings and undisputed facts the judgment is for the right party, there can be no reversal, no matter what errors intervened upon the trial." Bartley v. Ry. Co., 148 Mo. 142. (6) Where "it satisfactorily appears" that the trial court has "arbitrarily and unreasonably exercised" its discretion in granting a new trial on the ground that the verdict is against the evidence, the order will be set aside on appeal to the Supreme Court. Chouquette v. Ry. Co., 152 Mo. 267; Lee v. Knapp & Company, 137 Mo. 392. (7) "It is generally held an invasion of the province of the jury to set aside a verdict that is not clearly or decidedly against the evidence or the weight of the evidence." 29 Cyc. 824. (8) "When the correctness of the verdict depends on the credibility of witnesses, it should seldom be disturbed." 29 Cyc. 830. (9) The "prerogative and obvious duty of this court in 'this case' is to review the action of the trial court and determine from the law and the facts of the case whether the circuit court exercised a sound judicial discretion." Haven v. Ry. Co., 155 Mo. 216.

*W. H. Douglas* for respondent.

(1) The granting of a new trial on the ground that the verdict is against the weight of the evidence is discretionary with the trial court, and his action in granting a new trial will not be disturbed by an appellate court "except upon a showing that no verdict in favor of the party to whom the new trial is granted would be allowed to stand." State ex rel. v. Ellison, 268 Mo. 232; Lyons v. Carder, 253 Mo. 561; Foley v. Harrison, 233 Mo. 507; Smoot v. Kansas City, 194 Mo. 532; Casey v. Transit Co., 186 Mo. 232; Fitz John v. Transit Co., 183 Mo. 78. (2) Plaintiff was not guilty of contributory negligence as a matter of law. Kielty v. Const. Co., 121 Mo. App. 58; Smith v. Kansas City, 125 Mo. App. 150; 8 Thompson on Negligence, sec. 3912; Barnard v. Brick Co., 189 Mo. App. 417; Grace v. Walsh, 201 S. W. 582; Medley v. Mining Co., 207 S. W. 887; Bartolomeo v. McMahon, 178 Mass. 242; Grier v. Guarino, 214 Mass. 411; Coan v. City, 164 Mass. 206; Hennessy v. Boston, 161 Mass. 502; Breen v. Field, 159 Mass. 582; Baucino v. Fitzpatrick, 186 Mich. 1; Smith v. York Rys. Co., 237 Pa. 280. (3) The purported unsigned statements of plaintiff and other witnesses in the handwriting of the claim agent which the witnesses denied they executed were incompetent. Thomure v. Railroad Co., 191 Mo. App. 653; Gass v. U. Rys. Co., 232 S. W. 160. (4) The court committed error in giving Instructions 8 to 13. and Instruction 15. Setzler v. St. Ry. Co., 227 Mo. 454; Riebenhauer v. Railroad Co., 162 Mo. 270; Nelson v. Railroad, 113 Mo. App. 707; Sens v. Ry. Co., 112 Mo. App. 82; Hensler v. Stix, 113 Mo. App. 175; Caroll v. McDonald, 139 Mo. App. 540; McCaffery v. Railroad, 192 Mo. 159; Harrison v. Lakenan, 189 Mo. 599; Bank v. Stam, 186 Mo. App. 539; Knoell v. Lutz, 210 S. W. 927; Knapp v. Hauley, 153 Mo. App. 174; Williamson v. Railroad Co., 133 Mo. App. 381; Zeis v. Brewing Assn., 205 Mo. 653; Seeger v. Silver Co., 193 Mo. 410; Orris v. Railroad, 279 Mo. 10; Lord v. Delano, 188 S. W. 95; Dungan v. Railroad Co., 178

Mo. App. 171; Disbrow v. Co., 138 Mo. App. 56; Richardson v. Railway Co., 166 Mo. App. 162; Tallman v. Nelson, 141 Mo. App. 486; Zeis v. Brewing Assn., 205 Mo. 638, 648; Felder v. Railroad, 216 Mo. 208; Wise v. Traction Co., 198 Mo. 559; Turnbow v. Ry. Co., 272 Mo. 65; Tillery v. Harvey, 214 S. W. 248; 4 Thompson on Negligence, p. 66, sec. 3785; Wilt v. Caughlin, 176 Mo. App. 280.

RAILEY, C.—Plaintiff commenced this action in the Circuit Court of the City of St. Louis, Missouri, on January 15, 1921. The case was tried on an amended petition, which alleges that defendant was a corporation, doing business in the city of St. Louis aforesaid; that on August 4, 1919, the date of plaintiff's injury, the defendant was engaged in laying and connecting underground sprinkling or sewer pipes, at what is commonly called the General Motors Plant, near Union Avenue and the Natural Bridge Road, in said city; that on the above date, plaintiff was employed by defendant, and was engaged in laying and connecting sprinkler or sewer pipes in a ditch that had been furnished by defendant in which to lay and connect said pipe; that said ditch was from four to six hundred feet long, about three and one-half feet wide, and about five feet deep; that about ten feet south of where plaintiff was hurt, a pit had been dug in said ditch, about ten feet long, about eight feet wide, and about the depth of said ditch; that said pit was dug to lay therein what was called "crosses" or "T's" and "elbows," used in connecting pipe; that on the east side of said ditch, from about the pit northward twenty feet, the east wall of said ditch had been dug under, or undermined, for about ten or twelve inches, by digging on the side of said wall about two feet from the bottom, and sloping inward to the bottom of the ditch; that about fifteen or twenty feet north of the point where plaintiff was injured, and near where the ditch had been undermined, a bridge had been built over said ditch, for use in hauling heavy truck and wagon loads of material. The petition alleges that on August 4, 1919, while plaintiff

was at work for defendant laying or connecting pipe in said ditch, where the east wall of said ditch had been dug under, or undermined, the east wall caved in, and permanently injured him.

The petition further alleges that said ditch was undermined at the point aforesaid to make it wider at the bottom, so as to make room for the pipe or pipes which plaintiff was laying, as the ditch was not wide enough at said point, as originally dug, to lay said pipe in the position that plaintiff was instructed to lay it; that instead of digging the ditch wider at said point from top to bottom so as to leave the walls perpendicular at said point, the defendant dug it wider at the bottom, by digging it under the east side of the ditch, or undermining it as aforesaid. The petition then alleges that plaintiff's injuries were directly caused on account of the negligence of defendant in failing to furnish plaintiff a reasonably safe place in which to work, in this, to-wit: That defendant knew, or by the exercise of ordinary care could have known, that the ditch where plaintiff was at work, and where it was undermined as aforesaid, was apt to cave in or fall, unless propped or supported or shored up; that defendant negligently failed to prop, support, or shore up the walls or side of said ditch, where it was undermined, thereby causing it to cave in or fall on plaintiff; that defendant knew, or by the exercise of ordinary care could have known or should have anticipated, that there was danger of the wall or side of the ditch caving in, if dug under, or undermined in the manner aforesaid, unless the side where dug under or undermined was supported; that had defendant exercised ordinary care for the safety of plaintiff, and other employees at work in said ditch, where it was dug under the side, or undermined, it should have either supported the east wall of said ditch, or dug the ditch wider, instead of undermining it, so as to have left the wall *perpendicular,* but negligently failed to do so, thereby causing plaintiff's injuries.

The petition fully describes plaintiff's injuries, his physical condition, suffering, damages, etc., which will be referred to later. The petition concludes with a prayer for damages in the sum of $150,000, etc.

The answer, on which the case was tried, is simply a general denial.

The evidence, briefly stated, tends to show that, on August 4, 1919, plaintiff was injured by a section of the wall, trench or ditch suddenly caving in on him, and inflicting the injuries complained of in petition. At the time of said injury, defendant was installing, in the plant of the General Motors Company, in the northwest part of St. Louis, Missouri, what is commonly known as an automatic sprinkling system, for protection against fires. In large plants much of the work is done in trenches, or ditches, where pipes are laid to connect with the city water system, to carry the water into the factory buildings. The grounds of the General Motors Company are very large, occupying several blocks. They are bounded on the east by Union Avenue and on the south by the Natural Bridge Road. The installation of the sprinkler system in this plant required the excavation of six or seven hundred feet of ditches, and the laying of pipes therein. The ditch in which plaintiff was injured extended from the Natural Bridge Road north, about three or four hundred feet. It was forty-two inches, or three and one-half feet wide, and about five feet deep. It was dug with a machine, gaged to cut a width of forty-two inches. The excavated earth was thrown by the machine on the west side of the ditch. In this vicinity, before the accident, extensive strippings of the surface to a depth of from ten to fifteen feet had been removed, for the purpose of leveling the ground to the grade of the street. The soil, in which the ditch was dug, was a hard and compact clay, with seams in it. At the Natural Bridge Road, the ditch ran into a pit, which is described as a square hole about ten feet by ten feet, and a little deeper than the ditch or trench. Between sixty and eighty feet north of the pit, a temporary bridge had been built over the ditch,

by laying heavy stringers across it, and placing boards on top of same. The trench had been dug two or three weeks before the accident, and during that time this bridge was used by pedestrians, vehicles and heavy loaded motor trucks, etc. No part of the ditch under or adjoining said bridge caved in. Three pipe lines, one ten inches, and the other two six inches each, in diameter, were being laid in the ditch or trench. The pipes had been hauled into the grounds, and strung along parallel with the ditch and about ten feet east of the ditch. When needed, these pipes were rolled to the ditch and by means of ropes were let down from the east side into the ditch. The pipes were about twelve feet in length, and each weighed from three hundred and eighty to four hundred and ten pounds. In laying the pipes in the ditch, it was necessary to calk the joints, in order to prevent them from leaking. Bell holes were dug in the sides and bottom of the trench, where the joints were made for the purpose of enabling the pipe fitters to do the calking. These bell holes were small excavations, but large enough to give the fitters room to use their arms, shoulders, and tools, in calking the joints. These excavations were at intervals of twelve feet, extended about three feet up the sides of the ditch, were about eighteen inches in width, and in the bottom of the trench were about a foot deep, and two feet in width. The calking was done by first putting in yarn, and then tamping lead on top of the yarn. This was referred to by the workmen as "yarning" the joints, and was done with a hammer and chisel. At the time of the accident, at least two lines of pipe had been laid in the trench.

The accident occurred about 11:30 o'clock in the forenoon. There were five men at the scene of the accident, and four of these were in the trench or ditch. At the time plaintiff was hurt, he was down on his knees, astride the pipes, with his feet in the bell hole, calking a joint, when all of a sudden, and without any previous warning, about twenty-five feet of the east wall of the ditch caved in, part of it falling on his body, covering him over completely, and severely injuring him. Three

of plaintiff's fellow-workmen were also injured by the caving of said wall. The sides of the ditch or trench had not been propped or braced. It seems to have been practically conceded in the petition and by the evidence, that if the sides of the ditch had been dug perpendicularly in soil like that where plaintiff was working, it would not have been an unsafe place for pipe fitters to work. The petition alleges "that on the east side of said ditch, from about the pit northward about twenty feet, the east wall of said ditch had been dug under or undermined for about ten or twelve inches by digging up on the side of said wall about two feet from the bottom and sloping inward to the bottom of the ditch; that this was done in order to make the ditch wider, as it was too narrow at the point where undermined to lay the pipe or pipes in the manner plaintiff was instructed to lay them."

Dan Corcoran, who was at work in the ditch about twelve feet south of where plaintiff was hurt, testified, in substance, that the east wall of the trench was undermined, commencing at the bottom and extending about twenty-four inches above the bottom and back from said wall to a depth of twenty-two inches; that the slanting began about two feet above the bottom of the ditch, and went back twenty-two inches; that it was undermined for a distance of from sixty to eighty feet.

It appears from the evidence that Flotron, defendant's foreman in charge of said work, directed the laborers to do the undermining of the east wall. The men had a measuring stick twenty-two inches in length, and measured the depth of the undermining excavation as the work progressed. The evidence shows, that the undermining was done before the pipes were put into the ditch or trench.

John A. Stoppelman was working in the ditch about twelve feet north of where plaintiff was injured. He testified, in substance, that he was at work about thirty-six feet north from the pit, with Armstrong; that the ditch where he was working had been undermined; that it had also been undermined north and south of where

he was at work when the accident occurred; that he never paid much attention to the matter, but thought the east wall where he was at work had been undermined from four to six inches; that the undermining got wider as it went towards the pit.

John William Armstrong testified, in substance, that he was at work in the ditch north of plaintiff; that the east wall was undermined from sixteen to twenty-four inches from the pit north, a distance of twenty-five or thirty feet; that the east wall suddenly caved in and injured plaintiff.

John Geary, an experienced pipe fitter by trade, was asked by counsel for plaintiff whether an excavation undermining a wall from sixteen to twenty-two inches would be dangerous. Thereupon defendant's counsel said to the jury:

"I will admit to the jury if the trench was dug back sixteen to twenty-two inches, it ought to have been shored up."

John Geary was recalled by plaintiff, and testified in substance, that he saw the ditch where plaintiff was injured on the morning of the accident, and that he noticed the east wall was undermined a foot in some places.

J. W. Flotron, defendant's foreman, was sworn as a witness for plaintiff, and testified in substance that the east wall was undermined under his direction as foreman from fourteen to eighteen inches, maybe more in some places than others; that it was undermined for a distance of about thirty feet.

Frank Lamb testified in substance as a witness for plaintiff, that he was working for defendant at the time of the accident; that he was there when plaintiff was injured, and saw the east wall before the accident; that it was undermined for a distance of about forty feet in length, eighteen inches deep and about half the ditch down.

Nearly all of the foregoing was taken from the statement in appellant's brief. Such other matters as may be deemed important will be considered later.

The jury returned a verdict for defendant, and plaintiff, in due time, filed his motion for a new trial, which was sustained. Defendant appealed to this court from the order granting plaintiff a new trial.

I.   This case is here on defendant's appeal from an order granting plaintiff a new trial. The jury returned a verdict for defendant, and plaintiff filed a motion for a new trial, which, among other assignments of error, contains the following:

**New Trial.**

"1.   Because the verdict is against the evidence.

"2.   Because the verdict is against the weight of the evidence. . . .

"10.   Because the court erred in giving instructions numbered . . . nine . . . eleven, twelve, and thirteen . . . asked by defendant."

The record recites that, on February 21, 1921, plaintiff's motion for a new trial was sustained as to the first and second specifications therein, and on so much of the tenth specification as refers to the giving of instructions numbered 9, 11, 12 and 13 in behalf of defendant. Appellant contends that the trial court committed error in granting plaintiff a new trial. Respondent contends that the trial court committed no error in granting him a new trial, and that he was likewise entitled to same on other specifications contained in his motion.

Appellant's first assignment of error reads as follows:

"If the side of the trench which fell on the plaintiff was not undercut as much of the evidence goes to prove, then the risk of injury from the earth falling was an ordinary risk of the plaintiff's task, for all the evidence is to the effect that it was not necessary or customary to shore up the sides of a trench of that depth, when they are not undermined. In this, and all other jurisdictions, an employee assumes the risks ordinarily incident to his task, after the employer has used ordinary care to pro-

vide him with a reasonably safe place in which to work. [Fish v. Railway, 263 Mo. 106.]''

It was not contended by plaintiff in his petition, nor in the instructions given in his behalf, that the east wall of the ditch or trench would have been an unsafe place for plaintiff to work, if it had remained perpendicular, as originally constructed. The petition, however, charges that defendant negligently undertook to enlarge the bottom of said trench, by undermining the same, as heretofore shown from the evidence, without bracing or shoring said wall, where it was undermined, and that by reason thereof, plaintiff was injured as alleged in the petition. Plaintiff contended that said wall was undermined, while defendant insisted the contrary was true. This issue, and defendant's alleged negligence in respect to same, were submitted to the jury in plaintiff's instruction numbered one, and defendant's instruction numbered nine. It is manifest from the record that the trial court, in passing upon the motion for a new trial, came to the conclusion that error was committed in giving defendant's instruction nine, for reasons hereafter shown, and that the verdict of the jury was against the weight of the evidence. If the testimony of the foregoing witnesses is worthy of belief, the overwhelming weight of the evidence was with the plaintiff, in respect to the above matter. Appellant contends that these witnesses were successfully impeached, and that their testimony should be considered accordingly. The trial judge had the witnesses before him, and heard them testify at the trial of the case. He granted the plaintiff a new trial, because the verdict of the jury was against the weight of the evidence.

Section 1424, Revised Statutes 1919, provides that: ''The court may award a new trial of any issue, upon good cause shown; but not more than one new trial of the same issue shall be granted to any one party.''

It has been the settled doctrine of this court, for more than forty years, that the trial court may grant one

new trial to either party, where the verdict returned is deemed to be contrary to the weight of the evidence.

In Reid v. Piedmont & Arlington Life Ins. Co., 58 Mo. l. c. 429-30, WAGNER, J., in discussing this subject said:

"Constant complaints are reaching us that in some of the circuits the rule adopted here is followed, and that the judges consider themselves bound thereby. But this is founded in an entire misapprehension. The trial courts have opportunities which we have not. In witnessing and presiding over the trial, they are put in possession of facts which we cannot possibly attain. They see the witnesses; can form an opinion respecting their veracity; can observe whether they are biased or prejudiced; can notice their willingness or unwillingness, and a great many other circumstances which it is impossible to transfer to paper. They can also form a correct conclusion as to whether any improper influences operated on the jury in producing the verdict. All these considerations render it peculiarly proper that the question of granting new trials, on account of the verdict being against the weight of testimony, should be exclusively exercised by the court trying the cause, and where the trial court is of the opinion that the verdict is not supported by the evidence, or is against the weight of evidence, it should never hesitate in exercising the power and giving the aggrieved party a new trial."

The above clear and forceful statement of the law has been approved many times by this court, as shown by the following cases: Iron Mountain Bank v. Armstrong, 92 Mo. l. c. 279, 280, 4 S. W. 720; Bank v. Wood, 124 Mo. l. c. 77, 27 S. W. 554; Chitty v. Iron Mountain Ry. Co., 148 Mo. l. c. 78-79, 49 S. W. 868; Schmidt v. St. Louis Railroad Co., 149 Mo. l. c. 282, 50 S. W. 921, 73 Am. St. 380; Chouquette v. Electric Ry. Co., 152 Mo. l. c. 266, 53 S. W. 897; Taylor v. Gulf Ry. Co., 163 Mo. l. c. 191, 63 S. W. 375; McCarty v. St. Louis Transit Co., 192 Mo. l. c. 401-402, 91 S. W. 132; Johnson v. Grayson, 230 Mo. l. c. 393, 394, 130 S. W. 673; Ewart v.

Peniston, 233 Mo. 1. c. 709-710, 136 S. W. 422; Lyons v. Corder, 253 Mo. 1. c. 561, 162 S. W. 606; Devine v. St. Louis, 257 Mo. 1. c. 475, 165 S. W. 1014, 51 L. R. A. (N. S.) 860; State ex rel. v. Ellison, 268 Mo. 1. c. 231, 232, 186 S. W. 1075.

After reading and carefully considering the evidence, we are of the opinion, that the trial court was fully justified in granting a new trial on the ground that the verdict of the jury was against the weight of the evidence.

II. It was defendant's duty to exercise ordinary care in furnishing plaintiff a reasonably safe place to work. The evidence tends to show that the trench in which plaintiff sustained his injuries was too narrow at the bottom to have the work done properly. The foreman could have widened the trench and left the wall on the east side perpendicular, instead of undermining the same. If this had been done, the plaintiff would have been furnished a reasonably safe place to work. It was a negligent act on the part of the defendant, or its foreman, in undermining the east wall, if it was done, without propping or shoring the same, to keep it from caving in. If said east wall of the trench was undermined as alleged in the petition, and shown by the testimony, without propping or shoring same, the plaintiff did not assume the risk of injury from such negligence. [Williamson v. Light & Power Co., 281 Mo. 1. c. 549-50, 219 S. W. 902; Williams v. Pryor, 272 Mo. 613, 200 S. W. 53; Fish v. Railroad, 263 Mo. 106; Jewell v. Bolt & Nut Co., 231 Mo. 1. c. 194, 132 S. W. 703; George v. Railroad, 225 Mo. 364, 125 S. W. 196; Charlton v. Railroad, 200 Mo. 1. c. 433, 98 S. W. 529; Murphy v. Railroad, 115 Mo. 111.]

A single citation is sufficient to indicate the views of this court in respect to above matter. In Williamson v. Light & Power Co., 281 Mo. 1. c. 549-50, Goode, J., speaking for our Court in Banc, in which all the members thereof concurred, said:

"Defendant asserts that the deceased assumed the risk of injury from working on the platform, because its height and dimensions were apparent, and whatever danger there was in adjusting the dampers while standing on it, was apparent, too. That the deceased assumed the risk, under those conditions, especially if they existed when deceased took his job, probably is the law in most jurisdictions. [1 Shear. & Redf. Negligence (6 Ed.), secs. 207e et seq., original Sec. 185, and cited cases.] It is not in this one. The doctrine of this court is that an employee only assumes such risks, in respect of the place where he is put to work, as are incident to the service after the employer has performed his duty by using care to provide a place of reasonable safety. And although the danger of the place may be obvious, if this is due to lack of care on the part of the master to furnish a safe place, the servant does not assume the risk. Adjudications to the contrary may be found; but for a long time the rule of decision of the courts of this State on the subject has been as stated. [Williams v. Pryor, 272 Mo. 613, 621; Fish v. Railroad, 263 Mo. 106, 112; Curtis v. McNair, 173 Mo. 270.] Many other cases of the same character might be cited."

In view of the foregoing, we hold that plaintiff produced substantial evidence tending to show defendant's negligence and that he did not assume the risk of injury arising therefrom.

III. Appellant's second assignment of error is couched in the following language:

"If the side of the trench was undermined to the depth alleged in the petition, and which some of the testimony goes to prove, then the danger to the plaintiff in working in the trench (especially as he worked in a bent-over position) was so imminent and obvious that he was guilty of contributory negligence as a matter of law."

*Obvious Danger.*

A number of authorities are cited in support of above contention.

There is nothing in the record to indicate that plaintiff, by virtue of his contract of employment, was required to inspect the premises where he was working, to determine whether it was safe or otherwise. He saw that the undermining trench was there, but said he paid no attention to it. The undermining had been done under the direction of Flotron, defendant's foreman, before the pipes were put in the ditch. There is nothing in the record to indicate that the east wall appeared any more dangerous on the morning plaintiff was injured than at any other time after the undermining was done. When the east wall caved in, plaintiff was in the bottom of the ditch, with his feet in the bell holes, astride of the pipe, and doing his regular work. There was nothing to indicate to him that anything unusual had occurred to disturb the wall. The pipes were already in the ditch when the wall suddenly fell, without warning, and inflicted on plaintiff the severe injuries described in the petition. In view of the facts disclosed by the record, this court would not be justified in declaring, as a matter of law, that plaintiff was guilty of contributory negligence at the time and place of his injury. [Williamson v. Light & Power Co., 281 Mo. l. c. 550, 219 S. W. l. c. 904; Williams v. Pryor, 272 Mo. l. c. 625, 200 S. W. l. c. 56; Jewell v. Bolt & Nut Co., 231 Mo. l. c. 201; George v. Railroad, 225 Mo. l. c. 412, and cases cited; Burkard v. Rope Co., 217 Mo. l. c. 480-1; Clippard v. Transit Co., 202 Mo. l. c. 447; Charlton v. Railroad, 200 Mo. l. c. 440; Butz v. Construction Co., 199 Mo. 279-80; Sheperd v. Transit Co., 189 Mo. 362; Soeder v. Railroad, 100 Mo. l. c. 681-2; Huhn v. Railroad, 92 Mo. l. c. 447; Devlin v. Railroad, 87 Mo. l. c. 549-50; Stoddard v. Railroad, 65 Mo. l. c. 520-1.] Numerous decisions of our courts of appeals are in line with the foregoing authorities.

In Huhn v. Railroad, 92 Mo. 440, which has become one of the leading cases in this State on the above subject, the plaintiff's husband was defendant's yard-master at Independence, Missouri, and had charge of the railroad yards at that place. A freight train was due, and

it became his duty, in connection with an engineer, fire-man and switchman, to set out a car for that train. De-ceased directed the switchman to go forward and flag the train. The engine pulled in on the main track and waited for Huhn to throw the switch, which he did, and then signaled the fireman to back the train. As the car which he intended to take out passed him, he stepped in between the guard-rail and track rail, and received injuries from which he died. The negligence charged was defendant's failure to block the guard-rail. The accident occurred before our present statute in regard to blocking guard-rails, etc., was passed. Deceased knew the guard-rail was unblocked, and was fully aware of the danger which would overtake him, if his foot became caught therein. BLACK, .J., affirmed the judgment in favor of plaintiff and, in discussing the deceased's alleged con-tributory negligence, said:

"But if the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose that it may be safely used with great care, or skill, a different rule applies. In such cases, mere knowledge of the defect will not defeat a recovery. Negligence, on the part of the servant, in such cases, does not, neces-sarily, arise from his knowledge of the defect, but it is a question of fact, to be determined from such knowledge, and the other circumstances in evidence."

In Soeder v. Railway Co., 100 Mo. l. c. 681-2, BRACE, J., in considering this subject, said:

"As to whether there was a substantial defect in the track occasioned by the defective rail or whether the deceased was familiar with this particular track were questions also for the jury, as different conclusions might be drawn from the evidence on these subjects. Conceding, however, that the deceased was perfectly familiar with this track and remained in defendant's employment, this of itself would not have been sufficient to defeat a re-covery. The deceased's knowledge of the unsafe condi-tion of the track, if it was unsafe, would not defeat a re-

covery, if 'it was not so dangerous as to threaten immediate injury or if he might have reasonably supposed that he could safely work about it by the use of care and caution.' [Huhn v. Railroad, 92 Mo. 440, and cases cited.] The court committed no error in refusing to take the case from the jury.''

In Williamson v. Light & Power Co., 281 Mo. l. c. 550, heretofore quoted from, GOODE, J., said:

''Neither can we accept the proposition that the deceased so obviously contributed by his own negligence to cause his death, that he should be ruled to have done so as a matter of law. Unless to perform on the platform the work he was occupied with when he fell, appears conclusively from the allegations to have been plainly hazardous to a degree that would have deterred a man of ordinary prudence from the task, the deceased cannot be defeated on the score of contributory negligence.'' [Williams v. Pryor, 272 Mo. l. c. 623; George v. Railroad, 225 Mo. l. c. 411; Jewell v. Bolt & Nut Co., 231 Mo. 201.]

Without considering this question further, we are of the opinion, that the trial court committed no error, in refusing to non-suit plaintiff on the ground that he was guilty of contributory negligence, as a matter of law, at the time and place of accident.

IV. The court below granted a new trial on account of its error in giving instruction numbered nine on behalf of defendant. Appellant, in its brief, has not undertaken to justify the giving of said instruc-

**Literal Proof of Allegations.** tion. It is palpably erroneous and misleading, for the obvious reason that it informed the jury that plaintiff had charged in the petition that the east wall of the trench had been undermined to a depth of ten or twelve inches, and for a distance laterally of about twenty feet, and then concludes as follows: ''Now, if you believe from the evidence that there was no such excavation made in the east wall of said trench, this plaintiff is not entitled to recover in this case and

Littig v. Urbauer-Atwood Heating Co.

your verdict will be for the defendant.'' In other words, said instruction, as given, told the jurors that, although they might believe from the evidence that defendant was guilty of negligence in undermining said east wall to the depth of eight or nine inches or less, and for a distance laterally of about eighteen feet or less, and that plaintiff without fault upon his part was injured thereby, yet the jury must find for defendant, because the allegations in the petition as to the dimensions of said undermining had not been literally proven as alleged.

The court was clearly right in granting a new trial on account of the giving of said instruction.

V. The court below also granted plaintiff a new trial on account of the giving of defendant's instruction numbered 11, which reads as follows:

"The court instructs the jury that the mere fact that the east side of the trench caved in and injured the plaintiff is no evidence in this case of the negligence submitted for your consideration."

**Unwarranted Comment.**

Defendant has failed to brief and argue here the action of the court in respect to the above ruling, but, as the case is to be remanded for a new trial, we have deemed it proper to express our views in regard to the above declaration of law.

This instruction, on its face, is erroneous, for the obvious reason that the jurors were authorized to consider the caving in of said wall in connection with the alleged negligence of defendant in undermining it so as to render the trench, where plaintiff was injured, an unsafe place to work. Aside from the foregoing, the instruction is a plain, unwarranted comment on a detached portion of the evidence relied on by plaintiff in regard to the merits of the controversy. It has been condemned in many of the recent utterances of this court and should not have been given. [Burton v. Holman, 231 S. W. (Mo.) l. c. 634, and cases cited; State v. Adkins, 225 S. W. (Mo.) l. c. 982-3; Rice v. J. C. Bridge &

Transit Co., 216 S. W. (Mo.) l. c. 751; Harrington v. Dunham, 273 Mo. l. c. 430; State v. Mallock, 269 Mo. l. c. 239, 190 S. W. l. c. 268; Andrew v. Linebaugh, 260 Mo. l. c. 662-3; State v. Fish, 195 S. W. (Mo.) l. c. 998; Barr v. City of Kansas, 105 Mo. l. c. 559.]

VI.   The trial court, in its order sustaining plaintiff's motion for a new trial, reached the conclusion that defendant's instructions numbered 12 and 13 were erroneous. As no error is assigned by appellant in respect to them, the ruling of the trial court stands as unchallenged, and will not be further considered.

**Other Instructions.**

VII.   Respondent contends that he was entitled to have his motion for a new trial sustained on other specifications of error, aside from those sustained by the court, and complains of the action of the trial court in permitting defendant's counsel, or its witness, J. D. Leritz, to read, in the presence of the jury, under the guise of refreshing the memory of said witness, statements of plaintiff's witnesses, claimed to have been written down while they were detailing to Leritz the facts relating to the accident, although said statements were not signed by the witnesses.

**Reading Memoranda of Testimony.**

It is very doubtful whether counsel for respondent made timely and proper objections to the reading of these statements to the jury, but, as the case must be re-tried, we deem it proper to briefly present our views in respect to this matter. As a general rule, such statements are incompetent, are classed as hearsay testimony, and as self-serving declarations of the parties making them. [Townsend v. Schaden, 275 Mo. l. c. 244-5; O'Day v. Annex Realty Co., 191 S. W. (Mo.) l. c. 46; Laclede Land & Improvement Co. v. Goodno, 181 S. W. (Mo.) l. c. 413, and cases cited; Elliott v. Sheppard, 179 Mo. l. c. 390; Wilcoxen v. Darr, 139 Mo. l. c. 673; Coombs v. Coombs, 86 Mo. l. c. 178.]

Leritz was upon the witness stand, and had the legal right to impeach the testimony of plaintiff's witnesses, after a proper foundation had been laid, if he could do so, by testifying that they had made statements to him, or in his presence, in respect to material issues in the case, which differed from their testimony, given at the trial. If, during his examination, he had forgotten what was said in respect to some material matter, he might properly have been permitted to refer to a memorandum of the transaction, made at the time of its occurrence, solely for the purpose of refreshing his recollection, but in no event should he have been permitted to read the memorandum itself to the jury over plaintiff's objection. On the contrary, after reading the memorandum, in good faith, solely to refresh his recollection, he would be compelled to resort alone to his memory, in detailing what occurred, instead of reading from the memorandum.

VIII. Where a written statement or deposition signed by the witness is offered in evidence, counsel have no legal right to read to a witness on the stand, detached portions of said statement or deposition, for the purpose of impeaching him, but the statement or

Deposition:
Detached
Portions:
Impeachment.

deposition, should be shown to the witness, and if his signature thereto is admitted to be genuine, the whole statement or deposition, as far as it is competent, must be offered in evidence, and speaks for itself. If a part of the instrument does not bear upon the question under consideration, then the impeaching party must read to the jury, all that the instrument contains in reference to the impeaching matter, and opposing counsel may then read the remainder of the instrument, if any, that is relevant and competent.

The rule above indicated is fair to the witness, and should be observed in the trial of cases. If a witness has testified at the trial, and is then confronted on cross-examination with a written instrument signed by him, which is read to the jury, the latter can then determine,

in passing upon his credibility, whether his written statement is in conflict with his testimony given at the trial. We have, in no uncertain terms, condemned the practice, that sometimes finds its way into this court, of counsel, on cross-examination, reading a detached portion of the deposition or instrument, and then asking the witness whether he made such a statement, etc. And in some cases before us, counsel, after intimating in the above manner, that the witness is telling a different story from that contained in the deposition, closes the case without offering or reading the deposition to the jury, and thereby takes an undue advantage of the witness. The rule of procedure, as above indicated, has long been recognized as proper in this State, and should be followed by the trial courts. [Prewitt v. Martin, 59 Mo. l. c. 333-4; State v. Stein, 79 Mo. l. c. 332-3; State v. Matthews, 88 Mo. 121; Wilkerson v. Eilers, 114 Mo. l. c. 251-2; Berthold v. O'Hara, 121 Mo. l. c. 88; State v. Meyers, 198 Mo. l. c. 255-6; Hackleman v. Ry. Co., 203 Mo. App. l. c. 130-1, 217 S. W. 618; Showen v. Ry. Co., 191 Mo. App. l. c. 293-4, 177 S. W. 791; Ely-Walker Dry Goods Co. v. Mansur, 87 Mo. App. l. c. 113-4; State to use v. Reyburn, 31 Mo. App. l. c. 394; Cook v. Harrington, 31 Mo. App. 209-10.]

IX.   We have carefully considered all the questions submitted by counsel in this case, and have reached the conclusion that the trial court committed no error in granting plaintiff a new trial.

The judgment below is accordingly affirmed, and the cause remanded, with directions to the trial court to proceed with same in conformity with the views heretofore expressed. *White* and *Reeves, CC.*, concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.