**Betty L. KENAGY and Roy Kenagy, Respondents,**

v.

**ZARDA DEVELOPMENT COMPANY, INC., d/b/a Zarda Hickory Bar–B–Q, Appellant.**

**No. WD 38223.**

Missouri Court of Appeals, Western District.

Jan. 20, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1987.

Application to Transfer Denied April 14, 1987.

Robert Ernest Gould, Gould & Moore, Kansas City, for appellant.

Kirk R. Presley, Morris & Foust, Jefferson City, for respondents.

Before GAITAN, P.J., CLARK, C.J., and TURNAGE, J.

TURNAGE, Judge.

Betty Kenagy filed suit against Zarda Development Company, Inc. for injuries she sustained when she fell in Zarda's restaurant in Blue Springs. The jury found Zarda 85 percent at fault and Mrs. Kenagy 15 percent at fault and assessed Mrs. Kenagy's damages at $57,500. Accordingly, the court entered judgment in favor of Mrs. Kenagy for $48,875.[1]

Zarda contends that Mrs. Kenagy's verdict-directing instruction was not supported by the evidence. Reversed.

The Zarda restaurant in Blue Springs was almost square in shape. The entrance was located on the east, toward the north of the building. Adjacent to the entrance

---

**1.** Betty's husband, Roy, claimed damages for loss of services. The jury found in favor of Roy, but awarded no damages to him. No issue concerning Roy's claim is presented on this appeal.

on the north wall were two stations where the customers ordered food and drinks. South of the order stations was the front dining area. The southwest portion of the restaurant contained the rear dining area, which was raised about four inches above the level of the floor in the front dining area. There were two entrances to the rear dining area. One was near the west wall, at the end of a long aisle that ran along the north side of the restaurant. The other entrance was between the south wall and the south end of the salad bar, which ran north to south in the middle of the restaurant and which divided the raised rear dining area from the front dining area.

The south wall contained a row of booths in the front dining area and a long row of windows, which had light shades covering them, to diffuse the direct sunlight.

The entrance to the rear dining area at the south end of the salad bar had a step with a gold-colored metal strip at the top. At the right of that entrance was a solid wall behind the salad bar. On the south of the entrance, a booth protruded several feet from the wall into the entranceway.

Mrs. Kenagy's evidence was that the rear dining area was dark, but that the area in front where the salad bar and the order stations were located was well lighted.

On June 11, 1982, Betty and Roy went to the restaurant to join a nephew and his wife for dinner at Zarda's. They arrived at Zarda's at about 5:00 p.m. They had been to Zarda's frequently and were familiar with the restaurant. They planned to sit in a large booth in the rear dining area.

They entered the restaurant, placed their orders, and proceeded down the aisle on the north, so that they entered the dining area from the aisle on the north. The booth they desired was available, and they sat there until their number was called to pick up their orders.

Betty ordered only salad, so when she and Roy went to the order stations, she picked up only a tray and a plate to fill at the salad bar. Betty went to the salad bar and loaded her plate. At the end of the salad bar, she picked up her tray and went around the end of the bar, toward the southern entrance to the rear dining area. She testified that she was headed toward the booth her family was occupying in the rear dining area. She said she did not look at the floor as she walked, but rather into the rear dining area, which she said was darker than the area of the salad bar. She testified that she never saw the step leading into the rear dining area, but simply started walking, tripped on the step, and fell—causing two fractures in her left hand.

On cross-examination Betty admitted that she knew the rear dining area was about four inches higher than the remainder of the restaurant, so that when she left the salad bar to return to her booth, she knew that she was going to an area that was higher than the salad bar. She testified that she assumed there would be a ramp going to the dining area, rather than a step. She stated she did not look at the step and therefore did not see it. The only testimony relating to whether or not the step was in a lighted or darkened area of the restaurant came when Betty admitted that there was a window on the south wall extending past the step. She was asked if the front part of the restaurant was lighted, and she replied that it was. She was asked if that was where the step turned out to be and she replied that it was.

Betty's claim was submitted to the jury by an instruction hypothesizing that the step was in a darkened area at the end of the salad bar and that therefore the step was not reasonably safe for customers. Zarda contends there was no evidence to support the hypothesis that the step was in a darkened area. Betty does not point out any testimony that the step was in a darkened area, but relies primarily on her Exhibit No. 2, which was a sixteen inch by twenty-four inch blowup of a picture showing the end of the salad bar and the entrance into the rear dining area. Betty contends this picture is sufficient evidence to support the submission that the step was in a darkened area. On the contrary, the picture refutes the idea that the step was in the dark. The picture shows the rear

dining area to be quite dark and the area around the salad bar to be light. The step, with its gold-colored metal strip, is clearly visible in the picture. The step is not in the least obscured by darkness. Betty also introduced three small pictures that show even more clearly that the light coming from the windows on the south illuminated the step fully.

A review of the transcript and of the pictures reveals no evidence whatsoever that the step was located in a darkened area, so that it was not clearly visible.

■ There is no doubt that any issue submitted to the jury by an instruction must be supported by evidence, *Baker v. Brinker*, 585 S.W.2d 256, 258[1] (Mo.App. 1979), and that it is error to give an instruction that is not so supported. *Buus v. Stocker Oil Co.*, 625 S.W.2d 236, 237[1] (Mo.App.1981).

■ Although in considering whether or not an instruction is supported by the evidence, this court must view the evidence in the light most favorable to the party offering the instruction, *Baker*, 585 S.W.2d at 258[2], in this case even the evidence most favorable to Mrs. Kenagy cannot support her verdict-director. There is simply no evidence of any sort from which the jury could find that the step was located in a darkened area.

The only theory Mrs. Kenagy pursued and the only theory asserted here is that the step was located in a darkened area. Since that submission is not supported by the evidence, there is no basis for the verdict in favor of Mrs. Kenagy or the judgment entered thereon.

The judgment is reversed.

All concur.