Thomas **MOZELEWSKI,**
**Plaintiff/Appellant,**

v.

Keith **SHANNON,**
**Defendant/Respondent.**

No. 53302.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 30, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 1989.

Application to Transfer Denied
Sept. 12, 1989.

James S. Collins, II, St. Louis, for plaintiff/appellant.

Samuel T. Vandover, St. Louis, for defendant/respondent.

SATZ, Judge.

Plaintiff, Thomas Mozelewski, appeals from the judgment in his action for personal injuries and property damage. Plaintiff alleged his damages resulted from a collision between the motorcycle he was driving and an automobile driven by defendant, Keith Shannon. The jury rendered a verdict for plaintiff, found his damages to be $24,200 for personal injuries and $800 for property damages, and assessed plaintiff to be 90% at fault. We affirm.

The trial court submitted defendant's comparative fault instruction which was based upon plaintiff's failure to keep a lookout or his driving at excessive speed.[1] Plaintiff contends there was insufficient evidence to submit either of these two issues of fault to the jury. We disagree.

To determine whether the evidence supports the submission of an instruction, we view the evidence and inferences most favorably to the party offering the instruction and disregard all contrary evidence and inferences. *Arnone v. Hess*, 722 S.W.2d 355, 357 (Mo.App.1987). So viewed, the record shows the collision occurred on July 13, 1984, about 8:40 p.m., in St. Louis County, in the area depicted by the following schematic diagram.

---

1. In your verdict you must assess a percentage of fault to Plaintiff Thomas Mozelewski if you believe:
    First, either:
    Plaintiff Thomas Mozelewski failed to keep a careful lookout, or
    Plaintiff Thomas Mozelewski drove at an excessive speed, and

Second, Plaintiff Thomas Mozelewski, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and Third, such negligence of Plaintiff Thomas Mozelewski directly caused or directly contributed to cause any damage Plaintiff Mozelewski may have sustained.

The collision occurred at the intersection of Shackelford and Teakwood. At that intersection, Shackelford runs north and south and is two lanes in each direction. Each lane is twenty feet wide. The northbound lanes are separated from the southbound lanes by a double yellow line, and the curb and center lanes in each direction are separated by broken white lines. Teakwood runs east and west and intersects with Shackelford only on the west side of Shackelford. On the east side of Shackelford, opposite Teakwood, is the driveway for a McDonald's restaurant. There are no traffic control signals or signs at that intersection for north or southbound traffic on Shackelford.

Plaintiff was driving south on Shackelford. He stopped at the intersection of Shackelford and Mullanphy, the first inter-

section north of Shackelford and Teakwood. Mullanphy is about 660 feet north of Teakwood. Plaintiff, then, crossed that intersection, continued south on Shackelford, in the curb lane, reaching a speed of 25 to 30 miles per hour. Although the weather was clear and dry, plaintiff did not see a pick-up truck ahead of him, traveling south in the center lane, until he was about 75 feet behind the pick-up truck and 90 feet from the intersection.[2] The truck was then coming to a stop at the intersection. At that point, plaintiff "look[ed] ahead and check[ed] to see if there was some oncoming traffic northbound." He saw the "headlights of an oncoming car which [he] later had an accident with[.]" "At some point," thereafter his "view of the defendant's car, oncoming northbound, [was] blocked by the pickup truck." According to plaintiff, he continued to drive at 25 to 30 miles per hour until he was one or two car lengths, 15 or 30 feet, from the intersection. He then saw defendant's car ahead of him. He applied his brakes and "laid [his] bike down" in an attempt to avoid the collision.

Defendant approached the intersection from the south in the center lane of Shackelford. He intended to turn left, to the west, onto Teakwood. He activated his left turn signal before he reached the intersection, as he was slowing to a stop. As defendant's automobile was slowing down defendant's wife, sitting in the front passenger seat, saw the southbound truck stopped at the intersection. Defendant came to a full stop in the northbound center lane for about three seconds before his turn. Defendant made his turn at 2 to 5 miles per hour. As he "edged out into the intersection", his wife screamed and he saw sparks to his right. He applied his brakes. His car came to a stop, with its front even with the broken white line dividing the southbound lanes or just part way into the southbound curb lane.

The precise distance plaintiff had proceeded into the intersection before the collision is not made clear. From the record, it appears the collision occurred just "slightly" south of the north curb line of Teakwood. To complete the record, the court took judicial notice that a person's normal reaction time is ¾ second and also took judicial notice of the feet per second equivalents of 2, 5, 25 and 30 miles per hour.[3]

Defendant's comparative fault instruction is proper only if the evidence supports the submission of each of his disjunctive theories—failure to keep a lookout and excessive speed. *McCoy v. Hershey Chocolate Co.*, 655 S.W.2d 128, 130[1] (Mo.App. 1983). To submit "failure to keep a lookout," the record must show plaintiff knew or should have known a collision would likely occur in time to take effective precautionary action to avoid it. *Morgan v. Toomey*, 719 S.W.2d 129, 133[2–5] (Mo.App. 1986). To submit "excessive speed", the record must show plaintiff was driving at a speed which, under the circumstances, prevented him from avoiding the collision. *Hartenbach v. Johnson*, 628 S.W.2d 684, 688[8] (Mo.App.1982); *Schneider v. Finley*, 553 S.W.2d 727, 730[4] (Mo.App.1977). The evidence does meet these standards and, thus, supports both of the submissions.

Few if any vehicle collisions can be reconstructed with mathematical precision. From the present record, however, the following is clear. Plaintiff saw the lights of defendant's car when plaintiff was approximately 90 feet north of the intersection of Teakwood and Shackelford. Traveling at 30 miles per hour (44 feet per second), he would reach the intersection in 2.045 seconds. If defendant made his turn at 2 miles per hour (2.93 feet per second), his car must have been approximately 5.992 feet away from the collision when plaintiff, 90 feet north of the intersection, saw the headlights of defendant's car (2.045 seconds × 2.93 feet/second = 5.992 feet). The width of each lane of traffic was 20

---

**2.** Much of the testimony about distances was made in terms of "car lengths", with one car length being established as 15 feet.

**3.**

| MPH | | FT/SEC |
|-----|---|--------|
| 2 | – | 2.93 |
| 5 | – | 7.33 |
| 25 | – | 36.66 |
| 30 | – | 44.00 |

feet. Thus, even if defendant could have made his left turn with an immediate 90 degree turn to the left, rather than the probable 45 degree turn, his car must have been into its left turn, over the center line dividing the north and south lanes of Shackelford, when plaintiff saw the headlights of defendant's car. Thus, the jury could find that plaintiff saw defendant making his left turn and, therefore, plaintiff should have been aware a collision would likely occur. Plaintiff, then 90 feet away, had even more than the normal reaction time of ¾ second to have taken the precautionary action of slowing down to avoid the collision.[4]

■ Plaintiff also contends the jury's assessment of his damages at $25,000 ($24,200 + $800) "was so grossly inadequate as to indicate bias and prejudice," when his evidence showed his medical expenses and lost wages totaled $23,989.12 and his property damage was $800. Plaintiff conveniently omits the testimony of defendant's expert medical witness who testified that plaintiff was suffering from no permanent injuries and his knee surgeries were to correct a developmental abnormality, not an injury caused by the collision. The jury assessed the credibility of the witnesses and weighed the evidence, *Schrieber v. Alsup*, 721 S.W.2d 235, 236–7[2] (Mo.App. 1986). The trial court did not determine the jury's verdict was against the weight of the evidence, *Id.*, and plaintiff has not shown us the verdict was caused by the jury's bias and prejudice.

Judgment Affirmed.

SMITH, P.J., and STEPHAN, J., concur.

---

4. Admittedly, plaintiff testified he put on his brakes and "laid [his] bike down" when he was one car length, 15 feet, north of the intersection. Obviously, this would slow his speed down from 30 miles per hour. But, the slower plaintiff's speed prior to the collision, the farther defendant would be into his left turn when plaintiff first saw defendant's headlights and the longer plaintiff would have to react.

There are a number of combinations and permutations of the parties' speeds, i.e. plaintiff traveling from 25 to 30 miles per hour and defendant making his turn at 2 to 5 miles per hour. Those combinations most favorable to defendant place defendant into his left turn when plaintiff, 90 feet north of the intersection, saw the headlights of defendant's car.