Felicitas OLDAKER, et al., Appellants,

v.

Harold C. PETERS, et al., Respondents.

No. 73255.

Supreme Court of Missouri,
En Banc.

Oct. 16, 1991.

William H. Pickett, David T. Greis, Steve A. Matalone II, Kansas City, for appellants.

Judy L. Curran, Dist. Counsel, Kansas City, Rich Tiemeyer, Jefferson City, Theodore J. Furry, Kansas City, for respondents.

RENDLEN, Judge.

This is an action for wrongful death. The survivors of decedent Larry Oldaker appeal from the summary judgment entered for defendant Missouri Highway and Transportation Commission (Highway Commission) and the judgment following a verdict in favor of defendant Julia Reidlinger. The seminal issue is whether *Wilkes v. Missouri Highway and Transportation Commission,* 762 S.W.2d 27 (Mo. banc December 13, 1988, reh'g denied January 17, 1989), which applied the provisions for waiver of sovereign immunity contained in § 537.600, RSMo 1986, retrospectively to plaintiff there, is retroactive as to other cases in which the point has been preserved. Stated otherwise, should the holding of *Wilkes* control this case in which summary judgment was entered before *Wilkes* was decided, and will plaintiffs be allowed the benefit of that ruling liberalizing the waiver provisions for claims against the Highway Commission. Transfer was granted from the Missouri Court of Appeals, Western District, which, affirming the trial court, held that *Wilkes* should not apply in the case at bar. We affirm in part, and reverse in part and remand.

The accident occurred December 15, 1984, at approximately 8:15 p.m. as Julia Reidlinger drove north on Highway 71. She lost control of her car, hit the median, and blocked the passing lane adjacent to the median where her car was struck by another vehicle. Witnessing these events, Noble Lauderdale pulled his van to the side of the road and went to render assistance. Decedent Larry Oldaker, a staff sergeant in the United States Air Force, was also at the scene and he walked from the opposite side of the median to examine the wrecked vehicles. Lauderdale testified that he and Oldaker were standing in the safety area by the median, but other testimony placed Oldaker in the traffic lane. As Oldaker and Lauderdale were talking, another vehicle, driven by Harold Peters, struck Reidlinger's auto, which in turn threw Oldaker into the traffic and killed him.

Plaintiffs filed suit against Peters on June 3, 1985, and later added Reidlinger, State Farm Mutual Automobile Insurance Company and the Highway Commission as defendants. The claim against Peters was subsequently settled, and on July 15, 1987, the Highway Commission moved for summary judgment raising as a bar its claim of sovereign immunity. Citing *State ex rel. Missouri Highway and Transportation Commission v. Appelquist,* 698 S.W.2d 883 (Mo.App.1985), the trial court on June 23, 1988, sustained the motion and entered summary judgment for the Highway Commission. In December 1988, this Court rendered its decision in *Wilkes,* 762 S.W.2d 27, holding that the 1985 amendments to § 537.600 were to be given retrospective effect. After trial of the claim as to the remaining party during the week of August 15, 1989, the jury assessed zero percent fault to defendant Reidlinger and one hundred percent fault to decedent Oldaker.

## I. The Case Against the Highway Commission

Plaintiffs first contend the trial court erred in granting the Highway Com-

mission summary judgment on the basis of the state's sovereign immunity because § 537.600, RSMo, waives sovereign immunity in this instance. As a preliminary procedural point, respondent Highway Commission argues that plaintiffs are barred from raising this issue because they failed to renew their objection to the summary judgment and once again seek to join the Highway Commission as defendant after *Wilkes* was finally decided January 17, 1989, and before trial began against the remaining defendant on August 15 of that year. In effect the Commission would have plaintiffs collaterally estopped from raising the issue. Plaintiffs counter by noting the trial court's order of summary judgment in favor of the Commission did not contain the precise language required to make the order appealable under Rule 74.01(b). Plaintiffs' contention is well taken and as they appeal from both the summary judgment in favor of the Commission and the jury verdict in favor of the remain-

ing defendant after resolution of all issues in the case by the trial court, the matters are properly presented on appeal and we address the issues raised.[1]

◼ It will be recalled by way of background that this Court abrogated the common law doctrine of sovereign immunity in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), but the legislature responded with the enactment of § 537.600, RSMo 1978, reinstating the doctrine, with exceptions however, as to (a) torts arising from governmental operation of motor vehicles and (b) dangerous conditions on government property. Thereafter this Court in a 4 to 3 decision interpreted quite restrictively the statutorily prescribed waiver of sovereign immunity, holding it permitted suits against the public entity only in the circumstances (a) and (b) enumerated in the statute and only to the extent the governmental entity was covered by liability insurance. *Bartley v. Spe-*

---

1. The trial court's order failed to state there was "no just reason for delay" as required by revised Rule 74.01 (effective at the time of the order), which governs entry of judgments as to fewer than all claims or parties when multiple claims or parties are involved in the action. In *Stemley v. Downtown Medical Building, Inc.*, 762 S.W.2d 43, 45–46 (Mo. banc 1988), we excused a trial court from stating that there was "no just reason for delay" as required by revised Rule 74.01(b), by holding that the spirit of the rule was satisfied with the court's designation of its order as final for purposes of appeal, which sufficed under the prior version of Rule 74.01. *Stemley* was handed down in December 1988, and at the time of the trial court's granting of summary judgment in the present case in June 1988, plaintiffs could not have been charged with the prescience of anticipating this Court's ruling on the subject. *Stemley* proceeded on the basis that the cause was already presented to this Court on appeal and the trial court had designated its order as final for purposes of appeal, which sufficed under the prior rule, amended while the action was pending.

 The present case was pending when new Rule 74.01 was adopted, and the trial court entered an order after its effective date which was not in compliance with the new rule. Here the parties disagree as to whether the plaintiffs acted improperly in not taking further action to join the Highway Commission as defendant in light of *Wilkes*, which was handed down after summary judgment in favor of the Commission had been granted, and in the course of this argument, plaintiffs note that the order was not

in the proper form for an appealable judgment as to one claim or party. Rule 74.01.

 Notwithstanding *Stemley*, cases before and after have stated that a judgment as to one claim or party when there are multiple claims or parties in the action, though designated as final and appealable, is not so in the absence of a determination that "there is no just reason for delay," as required by new Rule 74.01. *Bi-State Development Agency v. Peckham, Guyton, Albers & Viets, Inc.*, 747 S.W.2d 332, 333–34 (Mo.App. 1988); *Southtown Dental Center v. Wausau Insurance Co.*, 770 S.W.2d 524 (Mo.App.1989). Prior to new rule 74, it was often unclear when a judgment as to some, but not all parties, was final for purposes of appeal. See *In re Estate of Caldwell*, 766 S.W.2d 464, 466 (Mo.App.1989). The new rule was crafted with an eye to clearing some of the confusion, see Laughrey, *Judgments—The New Missouri Rule*, 44 J.Mo.B. 11 (1988), but uncertainty has arisen in cases pending when the new rule became effective. In *Stemley* we *tolerated* the noncompliance with the revised rule and permitted the appeal, but this should not be construed to *mandate* that an appeal must be taken without the "magic language" of the amended rule. Our rules are to be construed "to secure the just, speedy and inexpensive determination of every action," Rule 41.03, and in the present case plaintiffs should not be punished for failing to appeal from an order on its face not containing the language required by Rule 74.01 and for failing to prophesy this Court's ruling in *Stemley* and instead waiting until entry of judgment and final resolution of all issues in the case.

. *cial School District of St. Louis County,* 649 S.W.2d 864, 870 (Mo. banc 1983).

As noted above, the accident occurred December 15, 1984, and at that moment the cause of action arose. The following year, the legislature, concerned by the narrow holding in *Bartley,* amended § 537.600, effective September 28, 1985, with the addition of subsection 2, which broadened the waiver of sovereign immunity provisions and allowed such waiver whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity was covered by liability insurance. However, a tail was added to subsection 1 providing that in actions founded upon negligent, defective or dangerous design of a highway or road designed or constructed prior to September 12, 1977, the public entity would be entitled to a complete defense if it demonstrated the alleged negligent, defective or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.

The trial court granted the Highway Commission's motion for summary judgment June 23, 1988, citing *State ex rel. Missouri Highway and Transportation Commission v. Appelquist,* 698 S.W.2d 883, 897–98 (Mo.App.1985), which held the 1985 amendments were to be applied only prospectively and not given retroactive effect. Subsequent decisions in the courts of appeal also recognized that causes of action based on incidents occurring after the enactment of § 537.600, RSMo 1978, but prior to the effective date of the 1985 amendments were barred by sovereign immunity when the defendant had no liability insurance. *E.g., Missouri Highway and Transportation Commission v. Ryan,* 741 S.W.2d 828, 829–30 (Mo.App.1987); *Aylward v. Baer,* 745 S.W.2d 692, 695 (Mo. App.1987); *Asher v. Department of Correction and Human Resources,* 727 S.W.2d 155, 156–57 (Mo.App.1987). In December 1988, approximately six months after the trial court's grant of summary judgment in favor of the Highway Commission in the case *sub judice,* this Court decided *Wilkes,* 762 S.W.2d at 28–29, holding that

the 1985 amendments were to be applied retroactively and that all decisions to the contrary, including *Appelquist,* 698 S.W.2d 883, "should not be followed."

The issue then is whether the statutory amendments are to be given retroactive effect as announced in *Wilkes* and should be applied to the case at bar. The trial court determined the case on the basis of what it deemed the applicable law in vogue the date the cause of action accrued. *See Ryan,* 741 S.W.2d at 829–30; *Aylward,* 745 S.W.2d at 695. *Compare Hudson v. Carr,* 668 S.W.2d 68, 69 (Mo. banc 1984). However, in *Wilkes* this Court construed § 537.-600, RSMo 1986, stating that the statute provided a remedy for a cause of action whose remedy was previously barred: "An act abrogating sovereign immunity does not create a new cause of action but provides a remedy for a cause of action already existing for which redress could not be had because of the immunity." 762 S.W.2d at 28. The Court further stated:

Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Id.* In addition, the Court, describing the applicable canon for construing statutory provisions, noted, "[a] statutory provision that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise." *Id.* In sum the Court held that "Section 537.600, RSMo 1986, is retroactive and applies to plaintiffs' claim," because the statute is remedial and contains neither express nor implied provisions manifesting a legislative intent that it apply only prospectively. *Id.* The Court concluded that *State ex rel. Missouri Highway and Transportation Commission v. Appelquist,* 698 S.W.2d 883 (Mo.App.1985), and similar cases "should not be followed." *Wilkes,* 762 S.W.2d at 29.

The Highway Commission argues these final words of the opinion, "should not be followed," indicate the Court intended the statute should reach back only to the plaintiff Clarence Wilkes. Such was not intended and is contrary to the express language of the case. The statute was found and declared to be "retroactive" in its effect and that the legislature so intended. *See also Mispagel v. Missouri Highway and Transportation Commission*, 785 S.W.2d 279 (Mo. banc 1990); *Brown v. Missouri Highway and Transportation Commission*, 805 S.W.2d 274 (Mo.App.1991). While the language overruling *Appelquist*, 698 S.W.2d 883 (and like cases), if standing alone, can arguably suggest that the ruling is to apply only to future cases,[2] that statement must be taken in context and considered with all that went before in the Court's opinion. Finally, in *Wilkes* the Court was considering a remedial statute which neither created, modified nor abrogated a substantive right or duty. The Court, examining the statute, found it to have retroactive effect and that the sovereign had waived immunity in such cases, past and future. The summary judgment denying plaintiffs' claim against the defendant Highway Commission is reversed and that cause is remanded for further proceedings.

## II. The Case Against Reidlinger

 The eight remaining points concern alleged errors during the trial in which Julia Reidlinger was the defendant. Plaintiffs' Point II complains the trial court improperly sustained defendant's objections when plaintiffs sought to introduce evidence of the decedent's habit of stopping to offer aid at the scene of an accident. Plaintiffs claim this evidence was probative of decedent's motive for going to the scene of the accident and relevant to the issue of comparative negligence. They contend defendant admitted the importance of such evidence in closing argument by discussing the lack of evidence as to why decedent was in that location.

During trial two attempts were made by plaintiffs to introduce evidence of Sergeant Oldaker's habit of stopping to help distressed motorists. Georgia Summerlin, decedent's aunt, testifying by deposition, was asked whether Oldaker had a reputation for trying to help people in distress. She replied: "Yes, he did. He would—if conditions were permitting he would stop to try to help. If they weren't he would—he always had a CB in his car, and he would call for ambulance and police." Reidlinger's counsel objected on grounds of lack of materiality and relevancy. When the court asked the purpose for the testimony, plaintiffs' counsel argued that it went to comparative fault, but made no mention of habit, nor was there an offer of proof. The court sustained the objection "as to the ... question and answer as to reputation."

Felicitas Oldaker, widow of decedent, was asked, "During the two years preceding your marriage, were you ever in a situation where Larry would ever stop and help people in distress?" Defendant objected to this question as immaterial and irrelevant, and plaintiffs argued it was "highly probative and relevant on the material issue of comparative fault." Again, no offer of proof was made and the trial judge sustained the objection.

Substantial deference is shown a decision of the trial court as to the admissibility of evidence, which will not be disturbed absent a showing of abuse of discretion. *Iota Management Corp. v. Boulevard Investment Co.*, 731 S.W.2d 399, 412 (Mo.App. 1987). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Richardson v. Colonial Life & Accident Insurance Co.*, 723 S.W.2d 912, 915 (Mo.App.1987). The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence, *Car-*

**2.** *See State v. Shafer*, 609 S.W.2d 153, 175 (Mo. banc 1980). But compare *Sumners v. Sumners,*

701 S.W.2d 720, 725 (Mo. banc 1985).

*lyle v. Lai,* 783 S.W.2d 925, 928 (Mo.App. 1989), and evidence of Sergeant Oldaker's alleged habit of helping distressed motorists has no clear bearing on the facts in issue. Further, it is of little moment that defendant's counsel, in closing argument, spoke of the lack of evidence as to why Oldaker was at that location. She was, in fact, responding to plaintiffs' closing argument which made reference to Sergeant Oldaker's "trying to help," concluding with, "that's what the ordinary man was doing when he got killed, trying to help somebody like he had all his life." Defendant's argument was a fair retort, to be viewed liberally by the law. *Titsworth v. Powell,* 776 S.W.2d 416, 422 (Mo.App.1989). Point II is denied.

■ Plaintiffs next complain the trial court erred in overruling their objections to defense counsel's allusions to mechanical defects in respondent's car, a defense neither pleaded nor proved, thus prejudicing the jury as it offered an alternative explanation of the accident, negating inferences of negligence. Plaintiffs allege a pattern of prejudicial references to such defect. Plaintiffs, however, did not object to several of these references, and though the trial court overruled most of those objections made, no motion for mistrial or other relief was requested. In this connection the trial judge, during closing argument, instructed the jury that argument of counsel was not to be considered as evidence.

"The mere happening of an accident does not establish negligence on the part of a motorist." *Powell v. Watson,* 526 S.W.2d 318, 327 (Mo.App.1975). Defendant, by her pleading, denied she was negligent, and both she and her witness, Noble Lauderdale, testified to that effect. Witness Lauderdale did testify he saw a "puff of smoke" near the left wheel. In *Coffel v. Spradley,* 495 S.W.2d 735 (Mo.App.1973), the court discussed testimony concerning sudden brake failure, comparing it to proof of sole cause, sudden emergency and unavoidable accident, saying that "[e]ach of the proofs is for the purpose of showing the defendant is free of the negligence alleged, and although they are asserted by

affirmative evidence, they are not matters constituting avoidance, and hence are not required to be affirmatively pleaded." *Id.* at 740. The court found that the evidence was a denial of plaintiff's cause of action and proper under a general denial with the risk of non-persuasion on the issue of defendant's negligence still remaining with the plaintiff. *Id.*

Such defense remains viable and a defendant is allowed to introduce evidence which tends to establish his freedom from negligence. *Cowell v. Thompson,* 713 S.W.2d 52, 54 (Mo.App.1986). This is what defendant did and was clearly within her right so to do. Point III is denied.

Plaintiffs next complain Instruction No. 6 was improper, as the facts hypothesized therein were not supported by the record. Specifically, they claim there was no evidence that Sergeant Oldaker failed to keep a careful lookout and that the lane referenced in the instruction was "reserved for traffic," as it was blocked by defendant's vehicle.

Instruction No. 6 reads:

In your verdict you must assess a percentage of fault to Lawrence Everett Oldaker, if you believe:

First, Lawrence Everett Oldaker either: failed to keep a careful lookout, or left a place of safety and stood in a lane reserved for moving traffic and in the immediate path of the automobile operated by Peters, and

Second, Lawrence Everett Oldaker in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of Lawrence Everett Oldaker directly caused or directly contributed to cause the death of Lawrence Everett Oldaker.

■ An issue submitted by an instruction must be supported by the evidence; the submission of any proposition without sufficient evidentiary foundation is error. *Kenagy v. Zarda Development Co., Inc.,* 726 S.W.2d 378, 380 (Mo.App.1987). Appellate review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable

by any theory, then its submission is proper. *Kim v. Conway & Forty, Inc.*, 772 S.W.2d 723, 727 (Mo.App.1989). The evidence and inferences therefrom are viewed most favorably to the party offering the instruction and all contrary evidence and inferences are to be disregarded. *Mozelewski v. Shannon*, 774 S.W.2d 849, 850 (Mo. App.1989).

■ The record demonstrates that there was little or no lighting on the highway, the roadway virtually dark. Harold Peters, the driver who hit the Reidlinger vehicle in the final collision, testified that Oldaker had his back to him and was "three feet into the traffic lane" when Peters first saw him. Oldaker had his back to Peters, in Peters' driving lane against the normal flow of traffic. The witness stated that he never saw the face of the decedent and never saw him move. Noble Lauderdale's testimony would place decedent looking into the Reidlinger car just before the collision. Lauderdale heard Peters' car coming and jumped for the safety of the median.

The evidence also supports the theory that decedent left a position of safety, placing himself voluntarily in a traffic lane. Decedent left his car and came across the highway from the southbound lanes, going over the median wall. He was standing in the fast traffic lane. Plaintiffs' argument that the situation was somehow akin to construction work is strained and unpersuasive. The lane in which decedent was standing was clearly reserved for traffic, albeit that part of it was obstructed by respondent's car. The evidence supports the instruction given and plaintiffs' Point IV is without merit.

■ Point V challenges the trial court's action in overruling their objection to the impeachment of Harold Peters by introducing only a part of his deposition. Plaintiffs claim this distorted the evidence and violated what they term the " 'rule of completeness,' i.e., that reading only an incomplete part of a deposition is misleading and confusing because connecting the omitted portions to the portions that were initially read, by means of a subsequent introduc-

tion in the trial, is essentially ineffective." Missouri, however, has not adopted this rule.

Plaintiffs cite *Peppers v. St. Louis–San Francisco Railway Co.*, 316 Mo. 1104, 295 S.W. 757 (1927), to support their contention. This Court examined the question in *State v. Graves*, 352 Mo. 1102, 182 S.W.2d 46 (1944), footnoting Missouri cases on the question, including *Peppers*, and observed:

We think there was no reversible error in the trial court's ruling, in view of the decisions in this state ... Of these, the *Littig* case [*Littig v. Urbauer–Atwood Heating Co.*, 292 Mo. 226, 237 S.W. 779 (1922)] sustains the court's ruling that the *entire* competent part of the transcript bearing on the point under inquiry should be read by the impeaching party. But nearly all the later cases cited tend to support appellant's contention; since they hold the impeaching party need read only such *portion* of the document as tends to impeach the witness, leaving it to the opposing party to read the remainder insofar as it may tend to rehabilitate the witness. And the *Peppers* case only holds the document should be shown to the witness *if he asks to see it;* declaring the practice condemned in the *Littig* case merely was *garbling* the facts, and failure of the cross-examiner to read the questions and answers about which *he* was inquiring.

*State v. Graves*, 182 S.W.2d at 52–53. Point V is denied.

■ Plaintiffs next contend the trial court erred in allowing respondent to improperly argue the comparative fault of two non-parties, the Highway Commission and Harold Peters. Appellants rely on *Jensen v. ARA Services, Inc.*, 736 S.W.2d 374 (Mo. banc 1987), and *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635 (Mo. banc 1987), for the proposition that fault is to be apportioned only among those at trial.

The issue, however, is not apportionment, but the alleged negligence of Reidlinger. Defendant may introduce any evidence that tends to establish that she is not guilty of the negligence charged. See *Birmingham v. Smith*, 420 S.W.2d 514, 516

(Mo.1967); *Hoehn v. Hampton*, 483 S.W.2d 403, 409 (Mo.App.1972). More recently, in *Simpson v. Smith*, 771 S.W.2d 368 (Mo. App.1989), the court addressed a similar point where error was alleged in allowing argument that "the sole cause of the death of plaintiff's [sic] deceased was the negligence of someone other than the defendant." *Id.* at 372. The court found no error, holding that "MAI 1.03 does not prevent a defendant from introducing evidence and arguing that the acts of one other than the defendant were the sole cause of the accident." *Id.* at 373. Point VI is denied.

■■■ The next allegation of error concerns a reference made during cross-examination to the possibility of decedent's widow, Felicitas Oldaker, returning to her native Philippines. The challenged exchange follows:

Q. Do you have any plans to—

MR. PICKETT: Your Honor, I object. This is irrelevant and immaterial.

THE COURT: I don't think there's a question pending.

Q. (By Mr. Furry) Do you have any plans to return to the Philippines after this litigation is over?

MR. PICKETT: Same objection, Your Honor, irrelevant and immaterial.

THE COURT: Overruled.

A. I plan to visit my family and will return to the United States.

On direct examination, the witness had been examined concerning her connections with the Philippines, her homesickness and problems encountered with winters in the United States. Because the subject had been broached on direct it cannot be said the trial court's ruling constituted an abuse of discretion. *See Lewis v. Envirotech Corp.*, 674 S.W.2d 105, 112 (Mo.App.1984). This point is denied.

■■■ Plaintiffs, in Point VII, claim error in what they characterize as defense counsel's impugning the ethics and integrity of plaintiffs' counsel and expert witness during closing argument. The portion of closing argument referenced by appellants follows:

Now, that's not fair. Just isn't fair, isn't simple justice to come in here and ask you to bring them a million, hundred thousand dollar judgment against this young lady. They want money and he's a very astute lawyer. He brought in a next door neighbor, flew her in from Virginia. He hired an economist for eight or nine hundred dollars to write a report. How much more did he get for testifying and coming in here and blow up these numbers? Well, look at this. His personal consumption out of this $635,000 is only $123,000. You think the guy that makes all the money, he's only going to get $123,000 out of it?

This professor has quite a business and listen, he's a qualified guy. There is no question. He's an economist. I'm sure a nice fellow but this is his business and he makes money at it, $50,000 last year. He only makes $40,000 as a full time professor. Sure, I could have got him to write a report. Had he written a report for me, he would have put in the fact that the median marriage is only 6.9 years and would have been way less.

MR. PICKETT: I object to the argumentative nature of something that wasn't brought out on cross and impugning people's integrity when they are not here.

THE COURT: Overruled.

MR. PICKETT: Inflammatory argument, totally improper.

THE COURT: Objection overruled.

The witness to whom counsel refers in closing argument is Gerald W. Olson, called as an expert witness by appellants. Olson operates a Kansas corporation, Olson Economic Research, Inc., and at appellants' counsel's request Olson prepared a report for him, charging approximately $800 to $900. Olson prepares approximately 50 to 100 of these reports per year, making just over $50,000 in this business in 1987. He described his familiarity with Department of Health statistics showing the average length of a marriage in 1984 as 9.5 years, with a median length of 6.9 years, and use of these statistics, he admitted, would have

put his projections of economic loss at a lower figure.

It is within the discretion of the trial judge to determine the prejudicial effect of final argument and the judgment of the trial court on the matter will not be disturbed unless an abuse of that discretion occurs. *Hoover's Dairy, Inc. v. Mid-American Dairymen, Inc.,* 700 S.W.2d 426, 434 (Mo. banc 1985). Ordinarily, the trial judge is in the best position to gauge the effect of the argument. *Wadlow By Wadlow v. Lindner Homes, Inc.,* 722 S.W.2d 621, 632 (Mo.App.1986). It is also permissible for counsel to draw his own conclusions from the evidence even though these "inferences at first blush may appear both illogical and erroneous." *Titsworth v. Powell,* 776 S.W.2d 416, 420 (Mo.App.1989). While the language of the argument was in part tasteless and demeaning in tone, we find no abuse of discretion on the part of the trial court. The only reference to plaintiffs' attorney was that he was an "astute lawyer," which in context might seem a slur, but on its face is a compliment, though the tone of voice might have indicated otherwise. We find no error in this particular. The comments made regarding the expert were within permissible parameters; moreover, the error claimed by appellants pertains to damages, an issue not reached by the jury in light of its verdict for defendant. Even assuming error *arguendo,* no prejudice could have resulted from the trial court's ruling. See *Moore v. Rollmo Corp.,* 575 S.W.2d 859, 862 (Mo. App.1978).

Finally, plaintiffs contend that the trial court erred in not granting their motion for a new trial because of the cumulative effect of the trial errors, but having found no error, we rule the point against them.

The action of the trial court in granting respondent Highway Commission's motion for summary judgment is reversed and the cause remanded for further proceedings as to that claim. The judgment as to respondent Reidlinger is affirmed.

Affirmed in part; reversed in part and remanded.

ROBERTSON, C.J., COVINGTON and HOLSTEIN, JJ., and HIGGINS and WASSERSTROM, Senior Judges, concur.

BLACKMAR, J., concurs in separate opinion filed.

BENTON and THOMAS, JJ., not participating because not members of the Court when case was submitted.

BLACKMAR, Judge, concurring.

It is the responsibility of counsel for the party in whose favor a judgment runs to make sure that there is a proper judgment entry which will accomplish the client's purpose.

Therefore, if the Highway Commission wanted a judgment which would start the appeal time running, and bar further proceedings by the plaintiff if no appeal were taken, it should have submitted a judgment entry containing the magic words of Rule 74.01, "no just reason for delay." Failing that, the judgment was not appealable on its face and so the plaintiff's time for appeal did not run.

*Stemley v. Downtown Medical Bldg. Inc.,* 762 S.W.2d 43 (Mo. banc 1988), does not stand in the way of this conclusion. There both parties were quite willing to participate in the appeal, and we excused the formalities because of the newness of the governing rule. It might have been possible to remand that case so that the trial court might be approached for a suitable entry, but it seemed practical not to do so. It is a step further to say that a party may be prejudiced by an order which is not appealable on its face.

Perhaps plaintiff's counsel was imprudent in not appealing earlier, when the trial judge so plainly intended an appealable order. Or the plaintiff could have sought modification of the order. But the appeal time cannot run on a judgment which is not in appealable form.