**FAITH HOSPITAL ASSOCIATION,**
Respondent/Cross–Appellant,

v.

**BLUE CROSS & BLUE SHIELD OF
MISSOURI, Appellant/Cross–
Respondent.**

Nos. 62050, 62092.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 18, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 23, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Armstrong, Teasdale, Schlafly & Davis,
Martin J. Toft, Ann E. Buckley, St. Louis,
for appellant.

Kohn, Shands, Elbert, Gianoulakis & Gil-
jum, Alan C. Kohn, Lisa A. Pake, St. Louis,
for respondent.

PUDLOWSKI, Judge.

Appellant Blue Cross and Blue Shield of Missouri (Blue Cross) appeals from a judgment in favor of Respondent Faith Hospital Association (Faith Hospital). The jury returned a verdict in favor of Faith Hospital on its breach of contract claim for Blue Cross' nonpayment for services provided to patient William Lowry. Blue Cross contends Faith Hospital's claim is preempted by the Employee Retirement Income Security Act of 1974 (ERISA) and the verdict directing instruction given to the jury was erroneous. Faith Hospital cross-appeals arguing it is entitled to an increase in the damages awarded. We affirm.

On June 30, 1988, Faith Hospital and Blue Cross executed a written Provider Agreement (Provider Agreement) that was effective through the end of 1989. Pursuant to the Provider Agreement, Faith Hospital would provide hospital services to persons covered by Blue Cross insurance, and Blue Cross would pay Faith Hospital its established charges for covered services.

The St. Louis Labor Health Institute (LHI) provides health care services for its members through contracts negotiated between their employers and the teamsters union. Under LHI's Medical and Hospital Service Plan (Plan), hospital benefits are provided to members through an Enrollment Agreement with Blue Cross. According to the Plan, hospitalization of a Plan member requires the LHI Medical Director's authorization. Pursuant to the Enrollment Agreement, Blue Cross processes claims submitted by hospitals for care furnished to LHI members. LHI decides whether claims for hospital services are payable under the LHI Plan. If LHI determines that the amount is properly payable, Blue Cross pays the hospital and is reimbursed by LHI with a percentage fee for administrative services. This arrangement allows LHI to take advantage of Blue Cross' favorable rates for prepaid hospital services and to provide its members with a recognizable medical card. LHI also employs a staff of physicians who examine and treat LHI members at a clinic.

William Lowry was admitted to Faith Hospital on September 19, 1988 and was diagnosed as having lung cancer. On September 20, 1988, Mr. Lowry underwent surgery and had part of his lung removed. He did reasonably well immediately after surgery, but suffered a severe stroke on the fifth post-operative day. Mr. Lowry's condition gradually worsened until his death on December 5, 1988. From the time of his surgery until his death, William Lowry was in Faith Hospital's intensive care unit.

When William Lowry was admitted on September 19, Faith Hospital was told that he would be covered by Medicare, with supplemental coverage from his insurance benefits as a retiree of Granite City Steel. William Lowry's wife Helen was a member of the LHI plan through her employer, Dobbs International. As his wife's dependent, Mr. Lowry was entitled to Blue Cross insurance under the LHI plan. On October 5, 1988, Helen Lowry went to Faith Hospital's Admitting Office and updated the admission forms with this coverage information.

This same day a Faith Hospital employee called Blue Cross to verify Mr. Lowry's insurance coverage. Upon obtaining assurance that Mr. Lowry was covered and that no pre-authorization was required, the Faith Hospital employee filled out an insurance verification form. Faith Hospital's patient accounts manager, Rita Miller Sanders, reviewed the verification form, found it to be in order and returned it to the patient file.

On October 20, 1988, Rita Miller Sanders learned that LHI was involved. She called Blue Cross to determine the order in which to submit the billing; whether Medicare or Blue Cross should be made the primary coverage. A Blue Cross employee told Ms. Sanders that she could not determine which was primary and to contact LHI. Ms. Sanders called LHI and was told that the medical director, Dr. Howe, would have to review the claim, but nothing was mentioned by either party about pre-authorization.

LHI's business manager, Peter Sharamitaro, learned that Mr. Lowry was hospitalized. On October 24, 1988, Mr. Sharamitaro wrote a memo to Dr. Howe inquiring what coverage should be made primary. Dr. Howe responded with a memo that Medicare should be primary, Granite City Steel secondary and LHI/Blue Cross would cover anything not already covered.

On January 16, 1989, Faith Hospital billed Blue Cross $160,150.60 for the care provided to William Lowry. Blue Cross contacted LHI's business manager who responded in a letter to Blue Cross on March 8, 1989, denying the claim. Faith Hospital received a notice, dated March 17, 1989, that Blue Cross had rejected the bill. This letter cited rejection codes that signified that the care was not authorized by LHI.

Rita Miller Sanders called Blue Cross for an explanation of the rejection and was told that pre-authorization was not required. Ms. Sanders sent a letter confirming this phone conversation with Blue Cross. On March 28, 1989, a Blue Cross employee called in response to the letter from Ms. Sanders and confirmed that William Lowry was covered by insurance and that there was no pre-authorization. Blue Cross did not pay the bill and this law suit followed.

Faith Hospital filed suit against Blue Cross for breach of contract on November 20, 1989, in the Circuit Court of the City of St. Louis. On January 2, 1990, Blue Cross attempted to remove the case to the United States District Court for the Eastern District of Missouri. Blue Cross specifically asserted that the case involved a claim for benefits under an employee benefit plan and therefore was governed by ERISA.

On May 15, 1990, the federal district court granted Faith Hospital's motion to remand on the grounds that this claim was not a federal ERISA claim, was not preempted by ERISA law and was, therefore, not removable from state court. The district court explained that Faith Hospital, a health care provider, was not a party "empowered by 29 U.S.C. § 1132 to bring

any civil action under ERISA" and Faith Hospital had no cause of action which would be subject to the federal question jurisdiction of the federal court.

Upon remand of the case back to the state circuit court, Blue Cross filed a motion for summary judgment. On January 24, 1991, the trial court denied the motion for summary judgment and specifically rejected Blue Cross' argument based on ERISA preemption. A jury trial commenced on January 16, 1992. The jury returned a verdict in favor of Faith Hospital and against Blue Cross in the amount of $157,380.00 on January 22, 1992.

The trial court entered judgment on the verdict. Blue Cross filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Faith Hospital filed a motion to increase the jury award and enter judgment for Faith Hospital in the full amount of the bill, $160,150.60, plus interest, $43,240.66. By its order of April 30, 1992, the trial court denied the motions of both parties. Blue Cross appeals seeking either reversal of the judgment based on ERISA preemption or a new trial based on the alleged error in the verdict director. Faith Hospital cross-appeals on the amount of damages awarded.

## I. ERISA Preemption

■ The federal district court's remand order determined that the federal court did not have original jurisdiction over Faith Hospital's claims. The order concluded that Faith Hospital was not a proper party [1] empowered to bring a civil action in federal court under ERISA. The state law claims Faith Hospital pled, therefore, could not be recharacterized as ERISA claims for purposes of establishing federal jurisdiction.

Because Blue Cross does not contest the federal district court's ruling on jurisdiction, we do not and cannot review the remand order for its jurisdictional determina-

---

1. Generally, those empowered under 29 U.S.C. § 1132(a) to bring a civil action under ERISA are "participants and beneficiaries."

tion. *See In re Life Ins. Co. of North America,* 857 F.2d 1190, 1193 (8th Cir. 1988). Blue Cross submits, however, that the remand order did not dispose of the issue whether Faith Hospital's claims nevertheless should have been precluded by a substantive preemption defense.

Several federal circuits have discussed the distinction between removability or complete preemption and preemption defense. *Soley v. First Nat. Bank of Commerce,* 923 F.2d 406 (5th Cir.1991); *Whitman v. Raley's Inc.,* 886 F.2d 1177 (9th Cir.1989); *Bryant v. Blue Cross and Blue Shield of Alabama,* 751 F.Supp. 968 (N.D.Ala.1990). The *Whitman* court explained:

> The jurisdictional issue of whether a "complete preemption" exists is very different from the substantive inquiry of whether a "preemption defense" may be established. The jurisdictional question concerning "complete preemption" centers on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims. The latter inquiry, concerning a "preemption defense," is a substantive inquiry as to whether a legal defense exists.
>
> \* \* \* \* \* \*
>
> If the federal court rules that the claim is not "completely preempted," then the federal court has no jurisdiction to rule on a substantive defense and remand is required. The substantive defense of preemption is then a matter for the state court to determine as a part of the trial proceedings. The federal court's ruling on "complete preemption" has no preclusive effect on the state court's consideration of the substantive preemption defense.

886 F.2d at 1181. As this case has travelled down these tracks, the issue before us on this first point is whether ERISA preemption is a substantive defense to Faith Hospital's claims.

ERISA preempts state law and state law claims that "relate to" employee benefit plans. 29 U.S.C. § 1144(a); *Pilot Life Ins.* *Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The phrase "relate to" is given broad meaning such that a state law cause of action is preempted if it has "connection with or reference to" the benefit plan. *St. Louis Children's Hospital v. Commerce Bancshares, Inc.,* 799 S.W.2d 87, 91 (Mo.App.1990) (quoting *Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). However, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

Blue Cross argues that Faith Hospital's claims were preempted by ERISA because William Lowry was a beneficiary of an employee benefit plan. Faith Hospital's claims "relate to" an employee benefit plan, according to Blue Cross, because they were an attempt to recover plan benefits based on a modification of the agreement and Lowry's care was not preauthorized.

Blue Cross cites several federal cases where health care provider's claims against ERISA plans were held preempted. *See Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991); and *Care Unit Hosp. v. Travelers Companies,* 787 F.Supp. 750 (S.D.Ohio 1991). Other federal cases are urged for the proposition that claims "relate to" a plan and are preempted by ERISA when representations are made that modify the terms of the plan. *Parkside Lutheran Hosp. v. R.J. Zeltner & Assoc.,* 788 F.Supp. 1002 (N.D.Ill.1992); and *Coonce v. Aetna Life Ins. Co.,* 777 F.Supp. 759 (W.D.Mo.1991).

We do not find these federal cases dispositive. In all of the federal cases relied on by Blue Cross, the provider was suing as an assignee of the plan participant/beneficiary. The providers stood in the shoes of the participant and was within the preempted scope of ERISA. In this case, Faith Hospital did not sue to recover benefits as a third-party beneficiary or as an assignee. Faith Hospital sued for breach

of its independent Provider Agreement with Blue Cross.

Furthermore, Blue Cross' modification argument is contrary to the facts. We found no piece of evidence showing that *pre*-authorization for hospitalization was required. Any representation by a Blue Cross employee to the effect that Lowry was covered by insurance, therefore, was not a modification of the Plan coverage. Thus, Blue Cross cannot avail itself of the federal case law holding that modifications "relate to" a plan.

The situation presented in this case is more appropriately addressed by *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990). In *Memorial Hospital*, the hospital sued an insurance company which administered an employee health care plan in which the patient was a participant. As in this case, the ERISA plan refused to pay hospital expenses after the plan had orally represented coverage to the hospital. In holding that the state claim for false representation of coverage was not preempted by ERISA, the *Memorial Hospital* court concluded:

> We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan.

904 F.2d at 250. The court then noted that the case involved the hospital seeking damages from an insurance company and concluded, "We do not think that Congress intended ERISA to regulate the commercial interactions of such entities in such situations." *Id.*

Although Faith Hospital's claim was labeled a breach of contract, the *Memorial Hospital* analysis is directly applicable. Faith Hospital's claim does not implicate the right to receive benefits under the ERISA Plan. The ERISA Plan is only tangentially or peripherally involved because that is what the insurance company happens to be underwriting. Faith Hospital's claim arises out of Blue Cross' failure to comply with their independent contract. Moreover, this claim has no effect on the administration of the Plan, the terms of the Plan, or the relationship between traditional ERISA entities.

In *Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752 (10th Cir.1991), the court relied on *Memorial Hospital* to find that a provider's state law promissory estoppel claim was not preempted by ERISA. The *Hospice of Metro Denver* court succinctly stated its reasoning, which is applicable to this case:

> An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan. Preemption in this case would stretch the "connected with or related to" standard too far.

944 F.2d at 756. Faith Hospital's claim is not preempted by ERISA.

## II. Instructional Error

Blue Cross' second point argues that the trial court erred in giving instruction six. Instruction six was the verdict directing instruction and read as follows:

> Your verdict must be for plaintiff if you believe:
>
> First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to furnish hospital services to persons covered by a Blue Cross and Blue Shield of Missouri Membership Agreement and defendant agreed to pay plaintiff its established charges for hospital services furnished by plaintiff to hospital patients covered by a Blue Cross and Blue Shield of Missouri Membership Agreement, and
>
> Second, the services provided by plaintiff to William Lowry were hospital services covered by Helen Lowry's Blue Cross and Blue Shield Membership Agreement and such services did not require pre-certification, and

Third, plaintiff performed its agreement, and

Fourth, defendant failed to perform its agreement, and

Fifth, plaintiff was thereby damaged.

Blue Cross contends that Faith Hospital failed to make a submissible case because the second paragraph was not supported by the evidence.

The submission of an issue without proper evidentiary foundation is error. *Oldaker v. Peters*, 817 S.W.2d 245, 251 (Mo. banc 1991). The appellate court reviews the evidence in the light most favorable to the submission of the instruction, and if the instruction is supportable on any theory, then its submission is proper. *Id.* The evidence and inferences therefrom are viewed most favorably to the party offering the instruction and all contrary evidence and inferences are disregarded. *Id.* at 252.

The second paragraph of the verdict director was submissible because there was substantial evidence that William Lowry's hospital services were covered under his wife's Plan and pre-certification/authorization was not required. On October 5, 1988, a Faith Hospital employee, named Selena, called Blue Cross to verify Mr. Lowry's insurance coverage. She was assured that Mr. Lowry was covered and that no pre-authorization was required. An insurance verification form also reflected this information, as well as, the unlimited coverage for one hundred percent of charges for up to 365 days.

Furthermore, after receiving a rejection of claim notice from Blue Cross on March 21, 1989, Rita Miller Sanders called Blue Cross for an explanation of the rejection. She spoke with an employee of the provider relations department who confirmed that pre-authorization was not required and suggested that because "[i]t's a large bill they probably just want to dispute the charges." Ms. Sanders was then urged to work it out with LHI. Ms. Sanders sent a letter to Blue Cross confirming this phone conversation. On March 28, 1989, a Blue Cross employee called in response to the letter and confirmed that William Lowry was covered by insurance and that there was no prior authorization.

Blue Cross asserts that its Provider Agreement with Faith Hospital specifically referenced the Blue Cross Membership Agreement or the LHI Plan. The Plan states at article XX:

5. The LHI shall not be liable for any hospital or medical care not authorized by the Medical Director, and the Medical Director shall have final authority on the extent of medical services to be rendered to any individual.

6. Hospital care as provided for herein shall be restricted to care in any general medical hospital and shall be rendered for in-patient care only upon the authorization and request of the attending physician, who must be acceptable to the LHI, be duly licensed to practice medicine, and upon the written request in an appropriate form by the member himself. No hospital shall have the right to select a physician or surgeon for any reason requiring hospital care under these rules and regulations.

According to Blue Cross, because the Plan allegedly required pre-authorization/certification, the submission that the services did not require pre-certification was not supported by the evidence.

The language of the Plan does not require *pre*-authorization. The plain language of the Plan would allow for authorization after a participant has been hospitalized. Faith Hospital's employees followed the proper procedures in verifying coverage and were repeatedly told that no pre-authorization was needed. Moreover, there is no evidence that Lowry's hospitalization was not authorized. From all of the evidence presented, the jury could reasonably infer that at some point Lowry's care was authorized. The jury was entitled to believe Faith Hospital's testimonial evidence of coverage over Blue Cross' documentary evidence of authorization. *See Bakelite Company v. Miller*, 372 S.W.2d 867, 871 (Mo.1963).

The Provider Agreement defined "covered services" as follows:

The hospital services which a Participant is entitled to receive under his BCBSMo Membership Agreement. Hospital shall also furnish as covered services, without charge to the Participant, those services presently furnished by Hospital and considered by the parties to be covered services.

Blue Cross' contends that the second paragraph of instruction six did not submit the alternative issue from the Provider Agreement of whether Faith Hospital and Blue Cross independently considered the services rendered to Lowry to be covered services. Because there was sufficient evidence to support the instruction on the theory that the services were covered by the Plan, failure to include the alternative submission that the parties considered the services to be covered regardless of the Plan terms was not reversible error.

The trial court determined that the second paragraph of the verdict director was mere surplusage and that the verdict could also be upheld on a theory of estoppel. Blue Cross argues that without the second paragraph of the verdict director the disputed issue of whether services rendered to Lowry were covered services would be omitted. Similarly, Blue Cross contends that elements of estoppel were not submitted in any instruction to the jury. These alternative bases for upholding the verdict need not be addressed because we find the evidence sufficient to uphold the verdict under the verdict director given.

### III. Motion to Increase Jury Award

Faith Hospital presented undisputed evidence that the charges for services provided to Mr. Lowry from the date of his admission until his death amounted to $160,150.60. The jury returned a verdict for $124,000 plus interest, an amount approximating Faith Hospital's charges for Lowry's care from October 5, 1988 through the date of his death, December 5, 1988. The trial court denied Faith Hospital's motion, under section 537.068, RSMo Supp. 1987, to increase the jury award.

Faith Hospital argues that the trial court abused its discretion in denying Faith Hospital's motion to increase the jury award. According to Faith Hospital, the evidence showed that Lowry was covered by Blue Cross insurance during the entire period of his hospitalization and the charges were reasonable and undisputed.

Additur is appropriate where the jury made an honest mistake in fixing the damages. *Knox v. Simmons*, 838 S.W.2d 21, 23 (Mo.App.1992). Faith Hospital contends the jury mistakenly calculated damages from the date coverage was verified rather than the date Lowry was admitted.

We disagree with Faith Hospital's characterization of the jury's damage determination as mistaken. It is clear that the jury heeded Faith Hospital's suggestion during closing argument that they could award damages from October 5 onward. One cannot complain about one's own proposed method of calculating damages. There was evidence, detailed above, upon which the jury could have found that Blue Cross only authorized Lowry's care from October 5.

In *Knox*, the jury made an honest mistake in fixing damages because they took into account plaintiff's comparative fault. 838 S.W.2d at 23. Here, the jury simply arrived at Faith Hospital's damages by considering the evidence and heeding the argument. There is no support in the record for Faith Hospital's assertion that the jury made an honest mistake. The trial court did not abuse its discretion in denying Faith Hospital's motion to increase the jury award.

The judgment of the trial court is Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.